**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JASON DOUGLAS, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-1741 |
| Plaintiff, | ) ) | Hon. Gary Feinerman |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| THE WESTERN UNION COMPANY, a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

<u>Submitted by:</u>

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260
**<u>www.siprut.com</u>**

*Counsel for Plaintiff*
*and the Proposed Settlement Class*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

PROCEDURAL HISTORY.................................................................................................3

   I.     THE PROPOSED SETTLEMENT .........................................................6

        A. Certification Of The Proposed Class ............................................6

        B. Class Relief ......................................................................................6

        C. Class Notice ......................................................................................6

        D. Incentive Award To Class Representative .......................................7

        E. Attorneys' Fees And Expenses .......................................................8

   II.    THE PROPOSED SETTLEMENT IS FAIR
        AND SHOULD BE PRELIMINARILY APPROVED ............................8

        A. Strength Of The Case Balanced Against The Settlement ..................9

           1.   Western Union's Asserted Defense.................................9

           2.   This Settlement Is Among The Most
               Superior TCPA Class Action Settlement Of All Time............................11

        B. Risk, Expense, & Complexity Of Case...........................................12

        C. The Opinion Of Counsel .................................................................13

        D. Extent Of Discovery ........................................................................13

        E. Presence Of Governmental Participants .........................................14

   III.   THE SETTLEMENT CLASS SHOULD
        BE PROVISIONALLY CERTIFIED; THE FORM
        AND METHOD OF NOTICE TO THE CLASS MEMBERS
        SHOULD BE APPROVED; AND, A HEARING REGARDING
        FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED .........14

        A. The Class Should Be Provisionally Certified ..................................14

           1.   Numerosity – F.R.C.P. 23(a) ...............................15

           2.   Commonality/Predominance – F.R.C.P. 23(a)(2) and 23(b)(3) .............16

           3.   Typicality – F.R.C.P. 23(a)(3) ...............................18

           4.   Adequacy Of Representation – F.R.C.P. 23(a)(4)....................................18

           5.   Superiority – F.R.C.P. 23(b)(3) ...............................19

        B. The Form and Method of Service of Class Notice Should Be Approved........20

        C. The Court Should Schedule A Hearing For Final Settlement Approval .........22

CONCLUSION .....................................................................................................................22

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods. Inc. v. Windsor,*
521 U.S. 591 (1997)..................................................................14, 15

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974)..................................................................20, 21

*Green Tree Fin. Corp.-Alabama v. Randolph,*
531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000)....................11

*Nicaj v. Shoe Carnival, Inc.,*
135 S. Ct. 1429, 191 L. Ed. 2d 366 (2015) ....................................8

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)................................................................16

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ......................................................8

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.,*
747 F.3d 489 (7th Cir. 2014) ......................................................15

*Butler v. Sears, Roebuck & Co.,*
727 F.3d 796 (7th Cir. 2013) ......................................................17

*Carnegie v. Household Int'l, Inc.,*
376 F.3d 656 (7th Cir. 2004) ......................................................20

*Donovan v. Estate of Fitzsimmons,*
778 F.2d 298 (7th Cir. 1985) ......................................................9

*in re Corrugated Container Antitrust Litigation,*
643 F.2d 195 (5th Cir. 1981) ......................................................14

*Ira Holtzman, C.P.A. v. Turza,*
728 F.3d 682 (7th Cir. 2013) ......................................................17

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ......................................................8

*Marcial v. Coronet Ins. Co.,*
880 F.2d 954 (7th Cir. 1989) ......................................................15

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ...............................................................................11

*Patterson v. Gen. Motors Corp.*,
631 F.2d 476 (7th Cir. 1980) ...............................................................................16

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) .................................................................................8

*Rosario v. Livaditis,*
963 F.2d 1013 (7th Cir. 1992) .............................................................................16

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) .................................................................................9

*Szabo v. Bridgeport Machines, Inc.*,
249 F.3d 672 (7th Cir. 2001) ...............................................................................15

*Williams v. Chartwell Fin. Serv., Ltd*.,
204 F.3d 748 (7th Cir. 2000) ...............................................................................15

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) .................................................................................9

**UNITED STATES DISTRICT COURT CASES**

*A & L Indus., Inc. v. P. Cipollini, Inc.*,
2014 WL 906180 (D.N.J. Mar. 7, 2014)...............................................................22

*Arthur v. Sallie Mae, Inc.*,
No. 10-CV-00198-JLR (W.D. Wash. Sept. 17, 2012).....................................12, 22

*Bayat v. Bank of the W.*,
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ...................11, 12

*Birchmeier v. Caribbean Cruise Line, Inc*.,
302 F.R.D. 240 (N.D. Ill. 2014)...........................................................................11

*Couser v. Comenity Bank*,
No. 12CV2484-MMA-BGS (S.D. Cal. May 27, 2015) ..........................................12

*Fletcher v. ZLB Behring LLC*,
245 F.R.D. 328 (N.D. Ill. 2006)...........................................................................17

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987)...........................................................................19

*Gress v. Premier Healthcare Exchange, Inc.*,
No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) ................................................................11

*Hinman v. M and M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ..........................................................................................19

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ....................................................................................................9

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ..............................................................................12, 21

*In re Neopharm, Inc. Secs. Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004) ..................................................................................................18

*Kessler v. Am. Resorts Int'l*,
2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ................................................................................8

*Maxwell v. Arrow Fin. Servs., LLC*,
No. 03-cv-1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) .....................................................15

*Pope v. Harvard Banchares, Inc.*,
240 F.R.D. 383 (N.D. Ill. 2006) ..................................................................................................16

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003) ..................................................................................................18

*Rose v. Bank of Am. Corp.*,
No. 5:11-CV-02390-EJD (N.D. Cal. Aug. 29, 2014) ..................................................................12

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992) ..................................................................................................16

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................................................13, 14

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006) ..................................................................................................15

*Whitten v. ARS Nat'l Servs. Inc.*,
2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ..............................................................................16

*Wilkins v. HSBC Bank Nevada, N.A.*,
No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ...............................................11, 12, 21

**STATUTES AND FEDERAL RULES**

28 U.S.C. § 1715 .................................................................................................................14

47 U.S.C. § 227 ....................................................................................................................1

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

**MISCELLANEOUS**

NEWBERG ON CLASS ACTIONS (4th ed. 2001 & 2002)......................................................15, 16, 20

MANUAL FOR COMPLEX LITIGATION (Fourth) .......................................................................14, 22

## **EXHIBIT LIST**

Settlement Agreement.............................................................................................................1

Affidavit of Joseph J. Siprut ...................................................................................................2

E-mail Notice ..........................................................................................................................3

Postcard Notice .......................................................................................................................4

Detailed Notice .......................................................................................................................5

Claim Form ..............................................................................................................................6

Pursuant to Fed. R. Civ. P. 23, Plaintiff Jason Douglas ("Plaintiff"), by his counsel, respectfully submits the following Motion For Preliminary Approval Of Proposed Class Settlement, and moves for an Order: (1) preliminarily approving the Agreement[1] as being fair, reasonable, and adequate; (2) preliminarily approving the form, manner, and content of the Class Notice; (3) setting the date and time of the Fairness Hearing for no earlier than 150 days from the date preliminary approval is granted; (4) provisionally certifying the Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only ("Class"); (5) provisionally appointing Plaintiff as representative of the Class; and (6) provisionally appointing Joseph J. Siprut and Siprut PC as Class Counsel.

## INTRODUCTION

Plaintiff and Defendant The Western Union Company ("Western Union") have entered into a Settlement Agreement (the "Settlement Agreement" or "Settlement") in the above-referenced matter. (Exhibit 1 attached hereto.) The Settlement Agreement—a product of extensive negotiations over the course of several months and mediations with Judge Wayne Andersen—settles the dispute relating to Plaintiff's allegation that Western Union sent unsolicited text messages to the wireless telephones of Plaintiff and the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

The cornerstone of the Settlement is the substantial, concrete monetary relief it provides for Settlement Class Members. The relief achieved by the Settlement is an "all-in" common fund in the amount of *$8,500,000*—cash (the "Settlement Fund"). What is more, as detailed below, when measured apples-to-apples against other court-approved TCPA settlements in this District

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as provided in the Parties' Settlement Agreement, attached hereto as Exhibit 1.

and nationwide, this Settlement is among the most superior TCPA class action settlements in the country—ever.

All Settlement Class Members who submit a Valid Claim will be paid cash out of the Settlement Fund. The Notice and Administration Costs, Attorneys' Fee Award, and Plaintiff's Incentive Award will be deducted from the Settlement Fund prior to the *pro rata* payments to the Settlement Class Members. The Settlement also provides that the best practicable notice be provided to Class Members, and calls for the designation of a reputable and competent professional Settlement Administrator to disseminate notice of and administer the Settlement.

This result is exceptional in light of Western Union's asserted defenses. Western Union not only had numerous defenses that could have defeated the Settlement Class Members' claims, but also had a potential arbitration claim that could have precluded class-wide litigation altogether. Moreover, the Parties were only able to reach the Settlement with the assistance of the respected and experienced JAMS mediator, the Hon. Wayne R. Andersen (Ret.). Negotiations were both difficult and multi-faceted as Western Union's insurer was also involved. The Parties were unable to reach the Settlement after months of arms' length negotiations and two separate mediation sessions. Nevertheless, the Parties continued negotiations until, finally, a resolution was achieved for the Settlement Class. The Settlement is thus the product of lengthy and particularly difficult negotiations.

In sum, although both sides believe their respective positions in the action are meritorious, they have concluded that, due to the uncertainties and expense of protracted litigation, it is in the best interest of Plaintiff, the putative Settlement Class, and Western Union to resolve this action on the terms provided in the attached Settlement Agreement. Accordingly,

and for reasons further detailed below, Plaintiff and Class Counsel request that this Court enter an order preliminary approving this Settlement.

## **PROCEDURAL HISTORY**

On March 12, 2014, Plaintiff filed his Class Action Complaint against Western Union seeking to represent a proposed class of all individuals or entities who allegedly received unsolicited text messages to their wireless telephones from or on behalf of Western Union. (Dkt. No. 1.)

On March 14, 2014, Plaintiff's process server effected service on Western Union. (Dkt. No. 10.) That same day, this Court set an initial status hearing for May 7, 2014 and required the Parties to file an initial status report by April 30, 2014. (Dkt. No. 9.) On April 3, 2014, Western Union moved for an extension of time to answer or otherwise plead. (Dkt. No. 14.) This Court granted Western Union's motion for extension of time and required it to answer or otherwise plead to the complaint by May 5, 2014. (Dkt. No. 16.)

On April 30, 2014, the Parties filed a Joint Initial Status Report (the "Initial Report"). (Dkt No. 20.) During the Parties' scheduling conference and in the Initial Report, Western Union represented that Plaintiff's claims may be subject to an arbitration agreement. (*Id.* at ¶5.) Western Union stated that absent an agreement to submit the claim to arbitration, Western Union would move to compel arbitration. (*Id.*) On May 5, 2014 this Court issued a Minute Entry stating that if Western Union intended to file a motion to compel arbitration, it should notice the motion for presentment at the initial status hearing. (Dkt. No. 21.) That same day, however, Western Union filed its Answer, denying the substance of the allegations and raising 30 affirmative defenses. (Dkt. No. 22.)

At the initial status hearing on May 7, 2014, Western Union indicated that it remained interested in filing a motion to compel arbitration. (Dkt. No. 23.) Per an agreement by the

Parties, this Court stayed discovery until 14 days after the Court's ruling on the forthcoming motion to compel arbitration. (*Id.*)

On May 27, 2014, Plaintiff filed his Motion To Strike Western Union's Affirmative Defenses. (Dkt. No. 24.) Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiff sought to strike each of Western Union's 30 affirmative defenses. At the presentment hearing on Plaintiff's motion to strike on June 12, 2014, the Parties reported that they intended to engage in private mediation. (Dkt. No. 26.) Accordingly, Plaintiff agreed to withdraw his motion with prejudice. (*Id.*) This Court ordered discovery to remain stayed pending further order. (*Id.*)

Between June and September 2014, the Parties engaged in back-and-forth negotiations over the selection of a mediator. (Affidavit of Joseph J. Siprut (the "Siprut Aff."), attached hereto as Exhibit 2, ¶12.) At the status hearing on September 9, 2014, the Parties reported that a mediation was scheduled for early October. (Dkt No. 27.) On October 9, 2014, the Parties, as well as a representative from Western Union's insurer, CNA, attended a mediation at JAMS Resolution Center with Judge Andersen (Rt.) serving as the Parties' mediator. (Dkt. No. 28.) The Parties conducted negotiations for a full day, but were unable to reach a resolution. (*Id.*) Nevertheless, the Parties made progress and agreed to continue negotiations at a later date to be determined.

Between October 2014 and February 2015, the Parties continued productive, informal settlement discussions. Western Union also was working through various coverage issues with its insurer. (Dkt. No. 30.) On February 27, 2015, the Parties engaged in another full-day session of mediation in New York with Judge Andersen presiding. (Dkt. No. 36.) The Parties continued their vigorous settlement negotiations for another three months. During that time, Plaintiff refiled

his pending Motion For Class Certification, pursuant to the Court's instruction. (Dkt. Nos. 34, 35, 37.)

On April 22, 2015, the Parties reported that they had reached an agreement in principle, resolving Plaintiff's claims on a class-wide basis. (Dkt. No. 39.) The Parties then spent four more months exchanging drafts of a final, written settlement agreement. (*See* Siprut Aff. ¶16.) After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of a settlement agreement in late July 2015 that has now been fully executed and attached hereto.

In the Agreement, Plaintiff negotiated confirmatory discovery given that the Court had previously stayed formal discovery. (Agreement ¶VII; Dkt. No. 26.) The Parties held several conference calls regarding the scope of confirmatory discovery following the execution of the Agreement. (Siprut Aff. ¶17.) In addition, the Parties stipulated to an Agreed Confidentiality Order, entered by the Court on August 28, 2015. (Dkt. No. 46.)

Thereafter, Western Union produced thousands of pages of documents, including lists of Settlement Class Members. (Siprut Aff. ¶18.) After conducting a comprehensive review of the documents, Plaintiff determined that the size of the Settlement Class is at most 823,472. Plaintiff has the names and last known addresses and mobile numbers for each Settlement Class Member. (*Id.*) In addition, Plaintiff has the last known email addresses for a subset of the Settlement Class. (*Id.*) Plaintiff also determined the manner in which the text messages were sent, including the involvement of third parties and the equipment used to send the text messages.

As a result of the above-described mediation sessions and conferences steered by Judge Anderson, the Parties have reached the Settlement they are now proposing that the Court preliminarily approve. The Parties request that the Court conditionally certify the Settlement Class set forth in their Settlement Agreement.

I.    **THE PROPOSED SETTLEMENT.**

The proposed Settlement provides the following:

A.  **Certification Of The Proposed Class.**

The Plaintiff requests that the Court, for the purposes of settlement, certify a Class

defined as:

> All Persons in the United States who received one or more unsolicited text
> messages sent by or on behalf of Western Union between March 12, 2010 and the
> date of Preliminary Approval.

B.  **Class Relief.**

The Settlement establishes the following relief for Class members:

- **Cash Awards Available To All Settlement Class Members.** Each Settlement Class
  Member who submits a Valid Claim, shall receive one pro rata share of the $8.5M
  Settlement Fund, after the Notice and Administration Costs (approximately $240,000)
  Plaintiff's requested Attorneys' Fee Award (35% of the Fund, approximately
  $2,891,000) and Incentive Award (approximately $5,000) have been deducted from
  the Settlement Fund (the "Net Settlement Fund"). Assuming the Net Settlement Fund
  is $5,364,000, Class Counsel estimates that if 1%, 3%, or 5% of Class Members
  submit Valid Claims, each said Class Member will receive approximately $651.37,
  $217.12, or $130.28 respectively.

- **No Reversion.** Under no circumstances shall any amounts of the Settlement Fund
  revert back to Western Union.

The Settlement is thus designed to afford relief to as many Class members as possible.

C.  **Class Notice.**

Subject to the Court granting preliminary approval of the Settlement, the Settlement

Administrator will provide the Class with notice of the proposed Settlement by the following

methods:

- **Direct Notice Via E-Mail And Postcard.** Within fourteen days after entry of an order
  preliminary approving the Settlement, Defendants shall provide the Settlement
  Administrator with the list of Settlement Class Members (the "List"). Within forty-five
  days after entry of an order preliminary approving the Settlement, the Settlement
  Administrator shall cause direct notice, in the form of Exhibit 3 attached hereto, to be
  sent to Class Members via e-mail from whom e-mail addresses are provided in the List.

In the event that the Settlement Administrator receives notifications of failed e-mail transmissions to Class Members, the Settlement Administrator shall cause direct notice to be sent to each of the affected Class Members at the physical addresses provided in the List via postcard. For those Class Members whom do not have e-mail address in the List, the Settlement Administrator shall cause direct notice, in the form of Exhibit 4 attached hereto, to be sent to Class Members for whom valid physical addresses are provided in the List.

- **Settlement Website.** The Settlement Administrator shall establish an Internet website. On the Settlement Website, Class Members shall be able to review the detailed notice, in the form of Exhibit 5 attached hereto, operative complaint, Settlement Agreement, and other settlement materials. In addition, Class Members may submit claims through the Settlement Website or may download a paper Claim Form, in the form of Exhibit 6 attached hereto, to be filed via mail. Class Members will also have access to information on how to opt-out of the Settlement.

- **Toll-Free Number.** The Settlement Administrator shall establish a toll-free number. Callers will hear an introductory message. Callers will then have the option to continue to get information about the Settlement in the form of recorded answers to frequently asked questions. Callers will also have an option to request a detailed notice and/or a Claim Form by mail.

In order to receive a Cash Award described above, the Settlement Class Member must submit a Claim Form within sixty days after the Notice Date. Class Members may submit their claims online and via mail. Class Members who wish to either opt-out of or object to the Settlement, must do so in accordance with the Agreement within sixty days after the Notice Date. Within thirty days of the Effective Date, or at another time as the Parties agree, the Settlement Administrator shall cause distribution of Cash Awards to the Settlement Class Members who submit Valid Claims.

### D. Incentive Award To Class Representative.

Subject to Court approval, the Plaintiff-Class Representative will request an Incentive Award in the amount of $5,000 in recognition of his contributions to the Settlement Class and the risk he incurred in commencing the action, both financial and otherwise. The Court does <u>not</u> need to award or otherwise rule on Plaintiff's incentive award at this time. Class Counsel will

file a motion for the incentive award, pursuant to the schedule in the Preliminary Approval Order, and will support the request for the award in detail.

**E. Attorneys' Fees And Expenses.**

Class Counsel will request fees and expenses in the amount of 35% of the Fund, after the Notice and Administration Costs are deducted (approximately $2,891,000). Importantly, however, this is not a provision of the Settlement. There is no agreement on fees—i.e., no "clear-sailing" provision—consistent with recent Seventh Circuit jurisprudence. *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) ("Clear-sailing clauses have not been held to be unlawful per se, but at least in a case such as this, involving a non-cash settlement award to the class, such a clause should be subjected to intense critical scrutiny by the district court[.]") *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429, 191 L. Ed. 2d 366 (2015). The

Court does <u>not</u> need to award or otherwise rule on Class Counsel's fees at this time. Class Counsel will file a motion for attorneys' fees separately, pursuant to the schedule in the Preliminary Approval Order, and will support the request for fees in detail.

**II. THE PROPOSED SETTLEMENT IS FAIR AND SHOULD BE PRELIMINARILY APPROVED.**

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). Although the standards to be applied at the preliminary approval stage "are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)). The factors considered at this stage include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement

offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

### A. Strength Of The Case Balanced Against The Settlement.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864; *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). However, "courts should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (internal quotations omitted). Moreover, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *Id.* (internal quotations omitted). Rather, the integral part of the Court's strength-versus-merits evaluation "is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

### 1. Western Union's Asserted Defenses.

Plaintiff alleges that Western Union violated the TCPA by sending unsolicited text messages to wireless telephones without prior express written consent. Plaintiff thus claims that he and the Settlement Class are entitled to statutory or actual damages, injunctive relief, and other equitable relief this Court deems appropriate.

Western Union, however, denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claim on both substantive and procedural grounds. Western Union has principally contended that Plaintiff's and the Settlement Class Members' claims are

subject to arbitration. According to Western Union, text messages are sent to people who have registered an online account with Western Union and thereby agreed to Western Union's Terms & Conditions, which require any dispute arising from or relating to the use of Western Union's services to be submitted to arbitration. Western Union also imposes a class action waiver in its Terms & Conditions. Western asserts that even if some Settlement Class Members had opted out of the arbitration provision and class action waiver, thousands of individual, fact-intensive inquiries would preclude class certification.

Further, Western Union contends that it obtained the requisite consent from Settlement Class Members, like Plaintiff, to be called (or, as in this case, to be sent text messages) because they voluntarily provided their wireless telephone numbers during the account registration process. On Western Union's view, prior express written consent, which requires more than mere voluntary provision of the number, is not required, because the text messages at issue do not introduce an advertisement. Thus, based on the issue of consent, Western Union believes that it will be able to both defeat Settlement Class Members' claims on the merits and at class certification, even if the arbitration provision and class action waiver do not apply.

In addition, Western Union asserts that the equipment used to send the text messages at issue does not qualify as an automatic telephone dialing system and that Western Union is not liable because a third party sent the text messages. Clearly, one of the factors to be considered as to the fairness of a class action settlement is Western Union's willingness and ability to mount just such a vigorous defense.

As explained above, the Settlement allows Settlement Class Members to receive direct, monetary relief. While Plaintiff believes that his claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex

litigation of this nature. If Western Union were to prevail on its asserted defenses, Settlement

Class Members, including Plaintiff, would receive no relief *at all*. And if Western Union were

correct about the applicability of an arbitration agreement, each Settlement Class Member would

individually have to bear the burden of prosecuting their claims through arbitration—a common

deterrent to individuals seeking legal recourse. *See Green Tree Fin. Corp.-Alabama v. Randolph*,

531 U.S. 79, 81, 121 S. Ct. 513, 517, 148 L. Ed. 2d 373 (2000) ("[T]he existence of large

arbitration costs may well preclude a litigant like Randolph from effectively vindicating such

rights.").[2]

### 2. This Settlement Is Among The Most Superior TCPA Class Action Settlements Of All Time.

Class Counsel's review of recent TCPA settlements from across the country empirically

establishes that the Settlement here outranks virtually of the significant TCPA settlements to

precede it. As illustrated below, on an apples-to-apples basis (comparing settlement common

funds to class sizes), Settlement Class Members have the opportunity to receive more than

---

[2] Although Western Union's total theoretical liability here is significant, and while "ruinous" liability is not a defense to class certification, it can, as a practical matter, affect a party's ability to collect on a judgment. *See generally Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014) (discussing the holding in *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)). Courts routinely approve settlements where a "total victory would threaten the defendant's ability to continue on as a viable entity." *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *5 (N.D. Ill. Feb. 27, 2015) (granting final approval of TCPA class action settlement where fund was $40 million but potential liability was $172 billion); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (granting final approval of TCPA class action settlement where fund was $75.5 million, but potential liability was $2.85 trillion) *appeal pending*, No. 15-1490 (7th Cir.); *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) (granting final approval of TCPA class action settlement where fund was $3.5 million, but potential liability was $435 million); *Gress v. Premier Healthcare Exchange, Inc.*, No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) (granting final approval of TCPA class action settlement where fund was $756,075, but potential liability was $25.9 million). "These cases properly recognize that a settlement is in the interests of class members who otherwise may not be entitled to any relief should their claims fail on the merits." *Bayat*, 2015 WL 1744342, at *3.

-11-

double (and in some cases more than triple) what class members have received in other court-approved TCPA settlements:

| CASE | CLASS SIZE | AMOUNT OF FUND | RATE/MEMBER |
|------|-----------|----------------|-------------|
| *Western Union* | 823,472 | $8,500,000 | $10.32 |
| *HSBC[3]* | 9,065,262 | $40,000,000 | $4.41 |
| *Capital One[4]* | 17,522,049 | $75,500,000 | $4.31 |
| *Bank of America[5]* | 7,723,000 | $32,000,000 | $4.14 |
| *Bank of the West[6]* | 871,836 | $3,400,000 | $3.90 |
| *Sallie Mae[7]* | 8,000,000 | $24,200,000 | $3.03 |
| *Comenity Bank[8]* | 4,000,000 | $8,500,000 | $2.13 |

Given that these settlements have been deemed fair, adequate, and reasonable, there should be no doubt that this Settlement readily satisfies these same standards of Rule 23.

## B. Risk, Expense, & Complexity Of Case.

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of Western Union's current and former employees. Western Union intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. Western Union would present—and Plaintiff would necessarily attempt to rebut—evidence and testimony on whether individual Class members provided the requisite consent to Western Union. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity

---

[3] *HSBC*, 2015 WL 890566, at *5.

[4] *In re Capital One*, No. 1:12-cv-10064, Docket No. 129 (N.D. Ill. July 14, 2014).

[5] *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *1 (N.D. Cal. Aug. 29, 2014) *reconsideration denied sub nom. Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2015 WL 1969094 (N.D. Cal. May 1, 2015).

[6] *Bayat*, 2015 WL 1744342, at *3.

[7] *Arthur v. Sallie Mae, Inc.*, No. 10-CV-00198-JLR, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012).

[8] *Couser v. Comenity Bank*, No. 12CV2484-MMA-BGS, 2015 WL 5117082, at *2 (S.D. Cal. May 27, 2015).

of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### C. The Opinion Of Counsel.

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011). Here, Class Counsel has extensive experience in consumer class actions and complex litigation, and has settled (with court approval) numerous TCPA cases. (*See* Siprut Aff. ¶29.) Based upon proposed Class Counsel's analysis and the information obtained from Western Union, a *pro rata* share of the Class Payment represents a significant recovery for the Settlement Class, especially when weighed against Western Union's anticipated defenses and the inherent risks of litigation. Class Counsel believes that the Settlement is beneficial to the Settlement Class and meets the class-certification requirements of Rule 23.

### D. Extent Of Discovery.

Based upon information exchanged by the Parties and the confirmatory discovery provided pursuant to the Settlement, Plaintiff believes it possesses the evidence needed to evaluate the strengths and weaknesses of the case. Western Union has provided Plaintiff with information relating to the manner in which the wireless telephone numbers were compiled, the software and equipment used to send the text messages, the level of involvement of Western Union, and empirical data concerning the number of text messages sent. As such, counsel for each party has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

While the Parties have both formally and informally exchanged information critical to evaluating the strength of Plaintiff's contentions (and Western Union's defenses), the amount of

discovery taken is not a prerequisite to a class action settlement. Courts have noted that "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted) (alteration original). *See also in re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 211 (5th Cir. 1981) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.") (emphasis omitted). Here, there is more than sufficient information to make a reasonable and informed decision, meaning that there was a reasonable, informed basis to evaluate the Settlement.

**E. Presence Of Governmental Participants.**

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities. Western Union will provide such notice which will include all appropriate information and documents required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

**III. THE SETTLEMENT CLASS SHOULD
BE PROVISIONALLY CERTIFIED; THE FORM
AND METHOD OF NOTICE TO THE CLASS MEMBERS
SHOULD BE APPROVED; AND, A HEARING REGARDING
FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED.**

**A. The Class Should Be Provisionally Certified.**

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632. Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv)

the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Williams v. Chartwell Fin. Serv., Ltd*., 204 F.3d 748, 760 (7th Cir. 2000).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. In this case, Plaintiff seeks certification of the Class under Rule 23(b)(3), which requires that (i) the questions of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Id*. at 615; *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 676 (7th Cir. 2001).

As discussed further below, the proposed Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.[9]

### 1. Numerosity — Federal Rule Of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is neither a specific number required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989)); 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004). "[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign*

---

[9] As detailed in the Settlement Agreement, Western Union does not oppose the request for class certification solely for the purposes of settlement.

*& Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006).

In this case, approximately 823,472 Settlement Class Members were sent text messages. (*See* Siprut Aff. ¶18.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

### 2. Commonality/Predominance — Federal Rule Of Civil Procedure 23(a)(2) and 23(b)(3).

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)), *cert. denied*, 451 U.S. 914 (1980)), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class."); *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("[C]ommonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

The Settlement Class shares common questions of fact and law that predominate over issues affecting only individual Settlement Class Members. Those common factual and legal issues include:

    a.  Whether Western Union engaged in a pattern of sending unsolicited text messages;

    b.  Whether Western Union and/or its agents used an automatic telephone dialing system to send the text messages, within the meaning of the TCPA;

    c.  The manner in which Western Union compiled or obtained its list of wireless telephone numbers; and

    d.  Whether Western Union thereby violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). A class action is the more efficient procedure for determining liability and damages in a case such as this, where "loss, and the statutory remedy, are the same for all recipients[.]"*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318, 188 L. Ed. 2d 306 (U.S. 2014).

In this case, common questions predominate for the Settlement Class because Western Union's alleged unlawful conduct presents common questions with regard to all proposed Settlement Class Members. *See Holtzman*, 728 F.3d at 684 ("Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients.").

-17-

Thus, in the context of the proposed class-wide settlement, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of Western Union's conduct.

### 3. Typicality — Federal Rule Of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Settlement Class allege that they all received unsolicited text messages from or on behalf of Western Union, and that Western Union sent or had sent on its behalf the text messages in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to actual or statutory damages and equitable relief. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Class members' claims.

### 4. Adequacy of Representation — Federal Rule Of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that: (i) their claims are not in conflict with

those of the proposed class, (ii) they have sufficient interests in the outcome of the case, and (iii) they are represented by experienced, competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are consonant with the interests of the Settlement Class— obtaining relief from Western Union for its alleged unlawful transmission of text messages, and ensuring that Western Union does not continue such conduct in the future. Plaintiff has no interests antagonistic to the interests of the other Settlement Class Members. (*See* Siprut Aff. ¶21.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*See id.* ¶20; Siprut Firm Resume (attached as Exhibit A to the Siprut Aff.).) Accordingly, Plaintiff and his counsel would adequately represent the proposed Class.

### 5. Superiority — Federal Rule Of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P.

23(b)(3). When settling a class action, Plaintiff does not have to prove manageability under Rule 23(b)(3) as if the case were being fully litigated because settlement may "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 117)).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class' claims. The burden and expense of individual prosecution of the litigation necessitated by Western Union's actions makes a class action superior to other available methods of resolution. Thus, absent a class action, it would be difficult, if not impossible, for individual members of the Class to obtain effective relief.

### B. The Form And Method Of Service Of Class Notice Should Be Approved.

"When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have class wide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement." 2 NEWBERG, section 11.30, p. 11-62-11-63. The substance of the notice must describe, in plain language, the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id.* Additionally, dissemination of the notice must comport with both Rule 23 and due process, which require that a class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The proposed notice plan in this case satisfies Rule 23's notice requirements as well as due process considerations, and provides:

    1.    A brief summary of the claims alleged in the action;

2. An explanation of the proposed terms of the Settlement, the amount the Class members are entitled to receive under the Settlement Agreement, and the method by which Class members can claim their Settlement benefit;

3. An explanation of the right to opt out of and/or object to the Settlement within given time-frames and subject to certain requirements;

4. An explanation that members of the Class who do not opt out will be bound by the proposed Settlement and judgment and will have released their claims;

5. An explanation that members of the Class who do not opt out will be represented by proposed Class Counsel; and

6. An identification of Class Counsel and a means for making inquiries thereof.

Federal courts authorize service of class notice by a variety of reliable means. In this regard, "[t]here is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, 'individual notice must be provided to those Class members who are identifiable through reasonable effort.'" *Eisen,* 417 U.S. at 175-76.

In this case, the Settlement provides for direct notice via e-mail and postcard to each of the 823,472 Class Members identified by Western Union. This notice method is reasonably calculated to reach the Settlement Class Members by the best means practicable and should be approved.[10]

---

[10] *See In re Capital One*, 80 F. Supp. 3d at 786 (granting final approval of notice plan that consisted of "1) sending 12,342,000 summary notices via email to all potential class members who had email addresses reflected in Capital One's records; (2) mailing 4,303,218 postcard notices via first class mail to class members who had opted out of receiving email from Capital One, who did not have email addresses on file, or whose emails were undeliverable; (3) running internet banner notices on 40 websites BrownGreer determined class members were likely to visit; (4) establishing a settlement website and toll-free information telephone number dedicated to answering telephone inquiries; and (5) providing notice of the settlement to the officials designated pursuant to Class Action Fairness Act"), *on appeal* 15-1490 (7th Cir.); *HSBC*, 2015

**C. The Court Should Schedule A Hearing For Final Settlement Approval.**

Following notice to the Class, a Fairness Hearing is to be held on the proposed Settlement. MANUAL FOR COMPLEX LITIGATION, § 21.633. Accordingly, Plaintiff, by proposed Class Counsel, respectfully requests that the Court schedule a hearing on final approval of the Settlement to be held no earlier than 150 days after entry of the Preliminary Approval Order. The hearing on the final settlement approval should be scheduled now so that the date can be disclosed in the class notice. After receiving final approval, the Parties request that the Court enter a Final Order and Judgment.

<u>**CONCLUSION**</u>

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and advantageous to the proposed Class, Plaintiff respectfully requests that the Court enter an Order:

A. Preliminarily approving the Settlement as being fair, reasonable, and adequate;

B. Setting the date and time of the Fairness Hearing to be held no earlier than 150 days after entry of the Preliminary Approval Order;

C. Provisionally certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

D. Appointing Plaintiff as Class representative;

---

WL 890566, at *3 (granting final approval of notice plan that consisted of "sending 6,586,221 summary notices via email to all potential class members who had email addresses reflected in HSBC's (or Capital One's) records; (2) mailing paper notices to 667,698 class members whose records did not contain an email address; (3) mailing paper notices to 744,658 class members with undeliverable emails; and (4) re-mailing paper notices with updated address information where the original mailings were returned undeliverable"); *Sallie Mae*, 2012 WL 4075238, at *1 (granting final approval of notice plan that consisted of e-mail and mail notice); *see also Bank of Am.*, 2014 WL 4273358, at *2 ("In this case, postal mail was well suited for locating and notifying class members, since the violations by defendant arose out of auto-dialed telephone calls and text messages made to cellular telephones, which typically have a name and physical mailing address associated with them."); *A & L Indus., Inc. v. P. Cipollini, Inc.*, 2014 WL 906180, at *1 (D.N.J. Mar. 7, 2014) (rejecting arguments that notice had to be served in accordance with Rule 5(b); "Rule 23(c) should supersede because Rule 23(c) addresses class notice specifically, whereas Rule 5 addresses service generally.").

E.     Appointing Joseph J. Siprut and Siprut PC as Class Counsel; and

F.     Such other and further relief the Court deems just and proper.


Dated: October 28, 2015                          Respectfully submitted,

                                                 By:  *s/ Joseph J. Siprut*

                                                 Joseph J. Siprut
                                                 *jsiprut@siprut.com*
                                                 Ismael T. Salam
                                                 *isalam@siprut.com*
                                                 **SIPRUT PC**
                                                 17 N. State Street
                                                 Suite 1600
                                                 Chicago, Illinois  60602
                                                 312.236.0000
                                                 Fax: 312.241.1260

                                                 ***Counsel for Plaintiff***
                                                 ***and the Proposed Settlement Class***

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Preliminary Approval Of Class Action Settlement** was filed this 28th day of October 2015 via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.


                                    *s/ Joseph J. Siprut*
                              _____


4812-3466-8840, v. 2