# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JASON DOUGLAS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-1741 |
| v. | ) ) | |
| THE WESTERN UNION COMPANY, a Delaware corporation, | ) ) ) | Hon. Gary Feinerman |
| Defendant. | ) ) | Magistrate Judge Jeffrey Cole |

---

## OBJECTION OF BETHANY CAROL PRICE

---

**NOW COMES** Class member, Bethany Carol Price ("Price")[1], by and through her undersigned counsel, pursuant to (1) the Class Action Notice, (2) Rule 23(d) of the Federal Rules of Civil Procedure, and (3) equity, and respectfully submits her Notice of Objection, Intention to Appear and Request to Be Heard at the April 8, 2016 at 10:00 a.m. Fairness Hearing:

> W. Allen McDonald
> LACY, PRICE & WAGNER
> 249 N. Peters Road, Suite 101
> Knoxville, TN 379234917
> Tel: 865-246-0800
>
> *Counsel for Bethany Carol Price*

---

[1] *See* Declaration of Bethany Carol Price, attached hereto.

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PERTINENT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. OBJECTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. The Settlement Fund Is Inadequate to Provide Meaningful and Appropriate Benefits to Class Members Under the TCPA. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B. The Proposed Settlement Fails to Compensate Class Members As Contemplated by the TCPA, *i.e.*, Based Upon the Number of Unsolicited Text Messages They Received.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C. Class Counsel's Fee Request Is Exorbitant and the Lodestar Method is the Better Approach to Compensation in this Case. . . . . . . . . . . . . . . . . . . . . . . . . 12

        1. Class Counsel are not entitled to a fee of 35% of the net settlement fund.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2. The lodestar method is the better approach in this case.. . . . . . . . . . . . 15

        3. Class Counsel's fee is exorbitant in view of the trifling amount of work completed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    D. The Named Plaintiff's Unearned and Excessive Incentive Award Should Be Reduced. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V. ADOPTION OF OTHER OBJECTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI. OBJECTION TO UNDULY BURDENSOME OBJECTION PROCEDURES. . . . . . . 20

VII. NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST TO BE HEARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VIII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

DECLARATION OF BETHANY CAROL PRICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I. PRELIMINARY STATEMENT

> The judge asked to approve the settlement of a class action is not to assume the passive role that is appropriate when there is genuine adverseness between the parties rather than the conflict of interest recognized and discussed in many previous class action cases, and present in this case. *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014); *Staton v. Boeing Co.*, 327 F.3d 938, 959-61 (9th Cir. 2003); *In re GMC Pick—Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 801, 819-20 (3d Cir. 1995). Critically the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members.[2]

Bethany Carol Price is a member of the Settlement Class defined in the Class Notice.[3] The proposed settlement provides dubious benefits to Class members and the excessive fees to Class Counsel. In form and in fact, the settlement crafted by Class Counsel suffers from fundamental deficiencies that cannot be cured, not the least of which are the inadequacy of settlement relief afforded to Class members and the unexplained lack of vigor in which Class Counsel litigated Class members' claims before deciding to reach a settlement at the infancy of the litigation. Predictably, the proposed settlement favors Class Counsel and presents the Class members they represent with a dismal result.

---

[2] *Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. Ill. 2014).

[3] Price has unsuccessfully attempted to submit a Claim Form online at www.WesternUnionTCPASettlement.com. However, she was prohibited from submitting a Claim Form without having the "12-digit, unique identifier provided in the postcard or email notice." Her counsel repeatedly called the toll-free telephone number listed on the Class Notice - call the toll-free number – 1-877-841-8516 – to speak with a person who could assist his client with completing the claims process. The undersigned was informed that he would receive a "status update" from the "resource team" investigating the matter for Epiq Systems, Inc. on Tuesday, February 23, 2016 – the day after the claims deadline.

The gross settlement negotiated by Class Counsel is $8,500,000. After notice and administrative costs are deducted, the net settlement fund will be $8,004,786. [Doc. 61, at Page ID #:340 ]. Class Counsel seek $2,801,675.10 in attorneys fees, 35% of the net amount, and $17,232.31 in expenses, leaving $5,185,878.59 available for Class members. [Doc. 61].

According to Class Counsel, with fourteen (14) days left for Class Members to submit claims, the Administrator had received 36,360 claims, a 5% claims-rate, already surpassing Class Counsel's expectations and "predictions" offered to the Court. [Doc. 61, at Page ID #:339]. Extrapolating these numbers reveals that there are 727,200 total Class members.[4] As one objector has pointed out, if it is assumed that each of those Class member received just a single unsolicited text message, the statutory liability for the TCPA claims would range from $363.6 million to $1.09 billion. Yet, the ever-diminishing amount of Class members' claims was at approximately $140 two weeks ago, an already-paltry amount subject to still more substantial reduction as claims continue to be filed during the final weeks of the claims period.

Thus, Plaintiff and Class Counsel mis-characterize the fundamental terms of their deal to Class members, incorrectly implying that it provides substantially more benefits to Class members than it truthfully does. And despite mis-informing Class members about the potential value of their claims, Class Counsel failed to negotiate relief for them by permitting them additional time (once they learn of the paltry value of their claims) to exclude themselves or object.

Equally dubious is Class Counsel's assertion that they engaged in substantial work in the case before reaching a settlement, as settlement negotiations began three months after the case was filed,

---

[4]This number is nearly 100,000 less than Class Counsel's previous statement wherein they allegedly confirmed that the size of the Settlement Class is "at most 823,472." [Doc. 61, at Page ID #:333].

the parties engaged in no formal discovery, no depositions were taken, no dispositive motions were filed, not a single substantive motion was contested and decided, and the bulk of the work appeared to come after the parties reached a settlement. All of this, easily distilled from the Court's docket, strongly suggests the impropriety of Class Counsel's settlement assessment, decision to settle at such an early stage, and fee request.

Here, as in many class action settlements, the person with the most at stake financially is Class Counsel. The task of this Court – if it eventually grants approval – is to set Class Counsel's fee at a level that will approximate what the market would set. Here, because of the unique circumstances presented, this task should be accomplished through use of the lodestar method, or at least through a lodestar cross-check, to insure Class Counsel are not overcompensated. It is legally correct for a district court to choose the lodestar method, not the percentage of fund method, and here, the lodestar is more likely to insure fair and reasonable compensation.

Amazingly, Class Counsel maintain that the alleged "enormous risks" they encountered in litigating this action – *for three months* before beginning settlement negotiations – entitles them to a "risk premium," warranting substantially more than the benchmark fee. This, to be sure, is utterly absurd. The percentage-of-the-fund method advocated by Class Counsel would inevitably result in over-compensation. What's more, these purported "enormous risks" are nothing more than known risks, commonly associated with class litigation, all of which are largely fictional and which should have been forecast by Class Counsel before filing suit. Opting for flight instead of fight, once Western Union filed its answer, Class Counsel abandoned any pretense or effort to develop a factual record necessary to flush-out the merits of the TCPA claim and quickly settled the case to secure a large fee for themselves at no risk – at the expense of Class members.

In the final analysis, Class Counsel's attempts to defend the fairness, adequacy, and reasonableness of the proposed settlement is nothing but smoke and mirrors. A fair assessment of the settlement terms and benefits and Class Counsel's fee request makes clear that the settlement is an extraordinary result for Class Counsel, but a dismal one for the members of the Class they purport to represent.

First, the settlement fund is insufficient to provide meaningful benefits to Class members in view of the $500 to $1500 in statutory damages available to Class members per violation under the Telephone Consumer Protection Act (TCPA or "the Act"), 47 U.S.C. §227(b)(3). Indeed, Class Counsel failed to provide any data which might enable the Court to quantify the potential recovery for the Class. Second, the proposed settlement fails to compensate Class members based upon the number of unsolicited text messages they received; Third, Class Counsel's fee request will result in a substantial windfall to the clear detriment of Class members, for what is demonstrably a lightly-litigated case. Class Counsel's fee request of $2,801,675.10 (35% of the settlement fund after administrative expenses and incentive awards are deducted) is exorbitant in view of the trifling amount of work completed in this case, including:

- not a single contested substantive motion was litigated to a decision;

- no dispositive motions were filed by Western Union;

- the most litigated motion – a motion to strike defenses [Doc. 24] – was eventually withdrawn by Plaintiffs by agreement [Doc. 26];

- the mediation that lead to settlement in the case began barely three months after the complaint was filed [Doc. 61, at Page ID #:332];

- no formal discovery was taken or exchanged;

■ despite their declaration that they devoted 2,164.4 hours to the case, Class Counsel failed to provide any corroborating details concerning their actual time records and hours spent on the case [Doc. 61];

■ Class Counsel identified the primary risk of continued litigation[5] as Western Union's "threat" to file a motion to compel arbitration [Doc. 61, at Page ID #:335]; and

■ no motion to compel arbitration was ever filed in the case.

In the end, even if the settlement is approved, Class Counsel's fee should be significantly reduced.

Fourth, while incentive awards for named plaintiffs are common-place and often appropriate, that is not the case here, where Plaintiff's participation was, at best, *de minimis*: he did not have to respond to discovery, was not deposed, did not have to execute an affidavit for class certification or summary judgment purposes, and did not have to testify. Frankly, it appears his only contribution was permitting Class Counsel to use his name on the Complaint, not hardly enough to justify $5,000.

Unfortunately, the reality of this proposed settlement is that it benefits Class Counsel vastly more than it does the consumers who comprise the Class. The conclusion is unavoidable: this proposed settlement gives preferential treatment to Class Counsel, not to the hundreds of thousands of unnamed consumers whose interests they were appointed to safeguard.

For all of this, final approval should be denied, and fees, if awarded, should be based upon the lodestar method or a blend of the lodestar and percentage-of-the-fund method.

## II.    PERTINENT FACTS

The procedural history of this case can be summed up briefly. Plaintiff filed this class action case against Defendant, The Western Union Company ("Western Union"), on March 12, 2014, on

---

[5]Along with the arbitration threat from Western Union, Class Counsel also considered that Class members may have waived the right to pursue class-wide relief and that Class members may have consented to Western Union's text messages. [Doc. 61, at Page ID #:335].

behalf of all individuals or entities who allegedly received unsolicited text messages to their wireless telephones from or on behalf of Western Union. [Doc. 1]. Western Union was served on or about March 18, 2014. [Doc. 10]. On May 5, 2014, Western Union filed its Answer, denying the substance of the allegations and raising affirmative defenses. [Doc. 22].

On May 27, 2014, Plaintiff filed what turned out to be the only contested substantive motion litigated by the parties, a motion to strike Western Union's affirmative defenses. [Doc. 24]. According to Class Counsel, "[d]uring this time, the Parties had numerous communications and exchanges, and discussed potential mediation tracks." [Doc. 61, at Page ID #:332]. Indeed, exactly three months after the complaint was filed, on June 12, 2014, the parties appeared for the argument on Plaintiff's motion to strike and reported to the Court that they "intended to engage in private mediation." [Doc. 26]. Consequently, Plaintiff agreed to withdraw his pending motion to strike and the Court ordered formal discovery to remain stayed. [*Id.*].

According to Class Counsel, Western Union produced confirmatory discovery, purportedly consisting of "thousands of pages of documents," including lists of potential Settlement Class members. [Doc. 61, Page ID #:333]. On October 28, 2015, Plaintiff filed his Motion For Preliminary Approval Of Class Action Settlement [Doc. 52], which this Court approved on November 10, 2015. [Doc. 58]. The parties settled the claims of Class members for $8,500,000. [Doc. 61, at Page ID #:330]. Under the proposed settlement, and according to the Class Notice:

> The cash payments will be approximately $250 or an equal share of the Settlement Fund, depending on the number of Valid Claims received. For example, if 1% of the Settlement Class submits Valid Claims, each Settlement Class Member would receive approximately $706. If, however, 5% of the Settlement Class submits Valid Claims, each Settlement Class Member would receive approximately $140.

[Class Notice, at ¶ 8]. Unfortunately, however, the 5% claims-rate has already been surpassed, inevitably leaving Class members in the dark as to the actual value of their claims (which will be substantially less than predicted. And notably, Class members are not permitted an opportunity to exclude themselves or object if their claims fall below a certain threshold.

After notice and administration costs are deducted, the settlement fund will be approximately $8,004,786. [Doc. 61, at Page ID #:340 ].[6] From that sum, Class Counsel seek $2,801,675.10 for their attorneys fees, 35% of the net amount, as well as $17,232.31 in expenses. In the end, a total of $5,185,878.59 is left available for distribution to Class members. [Doc. 61, at Page ID #:340].

## III.    STANDARD OF REVIEW

> "*Because class actions are rife with potential conflicts of interests between class counsel and class members, district judges are expected to give careful scrutiny to the terms of the proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.*"[7]

Absent class members have little at stake and thus insufficient incentive to closely monitor class counsel and his strategic choices. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987). Accordingly, the role of the district court in evaluating proposed settlements is akin "to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002).[8] District courts must "exercise the

---

[6]Class Counsel also seeks an incentive award for the named Plaintiff in the amount of $5,000. [Doc. 61, at Page ID#: 345].

[7]*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (citations omitted) (collecting cases).

[8]A district court must act as a "fiduciary of the class," for the rights and interests of absent class members. *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)).

highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs.,*

*Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Reynolds*, at 279).

> A trial judge's instinct, in our adversarial system of legal justice, is to approve a settlement, trusting the parties to have negotiated to a just result as an alternative to bearing the risks and costs of litigation. But the law quite rightly requires more than a judicial rubber stamp when the lawsuit that the parties have agreed to settle is a class action. The reason is the built-in conflict of interest in class action suits. The defendant (as RadioShack's lawyer candidly admitted at the oral argument) is interested only in the bottom line: how much the settlement will cost him. And class counsel, as "economic man," presumably is interested primarily in the size of the attorneys' fees provided for in the settlement, for those are the only money that class counsel, as distinct from the members of the class, get to keep. The optimal settlement from the joint standpoint of class counsel and defendant, assuming they are self-interested, is therefore a sum of money moderate in amount but weighted in favor of attorneys' fees for class counsel. Ordinarily – in this case dramatically – individual members of the class have such a small stake in the outcome of the class action that they have no incentive to monitor the settlement negotiations or challenge the terms agreed upon by class counsel and the defendant.[9]

When, as here, judicial approval of a proposed settlement is sought prior to class certification,

the Court must determine whether a class can be certified pursuant to Fed. R. Civ. P. 23(a) and 23(b).

"A class settlement cannot technically be approved unless, by definition, a class is upheld." 4

*Newberg on Class Actions* § 11.27 (4th ed. 2006). When the Court is asked to certify a class and

approve its settlement in a single proceeding, the requirements of Rule 23(a), which are intended to

protect the rights of absent class members, "demand undiluted, even heightened, attention." *Literary*

---

[9]*Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. Ill. 2014).

*Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011)

(citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).[10]

## IV.   OBJECTIONS

> *"When it comes to class actions, a court must 'give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.'"*[11]

### A.   The Settlement Fund Is Inadequate to Provide Meaningful and Appropriate Benefits to Class Members Under the TCPA.

In considering whether a class action settlement is fair, adequate and reasonable, a court

> "must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to the settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.'"

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting

*Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

The Telephone Consumer Protection Act (TCPA or "the Act"), 47 U.S.C. §227(b)(3), under

which the action was brought, authorizes an award of actual damages, or $500 per violation,

whichever is greater.  These amounts are trebled to $1,500 for wilful violations.  *See Soppet v.*

*Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. Ill. 2012).  Here, Class members are now

slated to receive substantially less than the low-end $140 estimate for their valid claims, as the 5%

---

[10]The Court's consideration of a proposed settlement is also binary: it must either approve or reject the settlement, as proposed.  If the Court concludes that the settlement is deficient, it must reject the entire settlement outright, and may not "delete, modify, or substitute certain provisions." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 176 (W.D. N.Y. 2011).

[11]*Mirfasihi*, 356 F.3d at 785.

claims-rate was exceeded two weeks ago. A survey of other TCPA cases indicates that $20-$40 per claimant is on the low side of compensation. *See, e.g., Grannan v. Alliant Law Grp., P.C.*, 2012 WL 216522, *7 (N.D. Cal. Jan. 24, 2012) ($300 to $325 per class member).

To be certain, a fair and detached analysis of the foregoing relevant factors cannot reasonably result in a determination that this proposed settlement is a fair, adequate, and reasonable one. For example, as to the strength of Plaintiff's claims, the TCPA claim is a strict liability claim. Either Class members received the unsolicited text messages or they did not. Assuming Class Counsel did not push the envelope by filing an unmerited claim, the TCPA claim surely had substantial value.

Moreover, while Class Counsel feigns worry over Western Union's unrealized "threat" to seek arbitration, over waiver by Class members of class-wide relief, or about whether Class members may have consented to text messages [Doc. 61, at Page ID #:335], the plain and simple fact is that Western Union never filed the first motion seeking such relief, nor did Class Counsel go through with even any effort to actually test the viability of such defenses. What's more, given that there are somewhere between 700,000 to 830,000 Class members, there was little risk that Western Union would ultimately expose itself to statutory damages ranging from $350,000,000 to $415,000,000 at the low end of the scale to damages approaching $1.25 billion dollars.

In addition, there is evidence that Class Counsel may have underestimated the size of the Class. Here, Price received an unsolicited text message from Western Union during the Class Period but did not did not receive a 12-digit claim identifier number. It is likely that other Class members did not receive the information required to submit an online Claim Form.

For certain, "[t]t is perfectly fair and reasonable, and indeed common and accepted, for settlement benefits to turn on the strength of class member's claims." *In re Oil Spill by Oil Rig*

*Deepwater Horizon in Gulf of Mexico on April 20, 2010*, 910 F. Supp.2d 891, 948 (E.D. La. 2012), aff'd, 739 F.3d 790 (5ᵗʰ Cir. 2014). However, in most cases, a court cannot make an informed judgment about the fairness, reasonableness, and adequacy of a class settlement without assessing the likelihood and value to the class of the case's possible outcomes, *i.e.*, the net expected value of the litigation. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (citing *Synfuel*, 463 F.3d at 653). A court must normally "weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class' claims." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011).

Here, although the potential relief for each Class member is fairly well-known – with each violation calculated at $500-$1,500 under the TCPA, leading to a potential judgment of almost $1.25 billion – Class Counsel have presented no evidence at all to permit the Court to reasonably quantify or otherwise assess the actual value to the Class considering continued litigation.

Equally significant, as explained below, is the fact that Class Counsel began settlement negotiations only three months after they filed the complaint. Not only were none of the Plaintiff's claims ever tested, but none of Western Union's defenses were tested either. Frankly, the almost immediate efforts to settle Plaintiff's claims without the benefit of even initial disclosures – much less the first page of discovery – is enough to warrant serious concerns about the worthiness of the ultimate settlement. An analysis of the totality of circumstances concerning the proposed settlement, however, leaves no doubt: the proposed settlement is inadequate and should be rejected.

**B.    The Proposed Settlement Fails to Compensate Class Members As Contemplated by the TCPA, *i.e.*, Based Upon the Number of Unsolicited Text Messages They Received.**

Next, the proposed settlement is also unfair because it appears to not compensate Class members in the way the TCPA is intended: that is, *per message* and not per claimant. [Doc. 52-1, at Page ID #:240] ("Settlement Class Members who received one or more unsolicited messages sent by or on behalf of Western Union and who submit a Valid Claim will be eligible to receive up to $250"]. Under the proposed settlement, a Class member who receives 1,000 text messages from Western Union receives the same payment as a Class member who receives a single text message. Thus, the compensation for Class members is both inadequate and unfair, given the size of each civil penalty available under the TCPA and the utter lack of proportionality as to how the proceeds are distributed based upon the number of text messages to each Class member.

**C.    Class Counsel's Fee Request Is Exorbitant and the Lodestar Method is the Better Approach to Compensation in this Case.**

Class Counsel seek attorneys' fees in the amount of 35% of the net amount, or $2,801,675.10. [Doc. 61, at Page ID #:340 ]. Three attorneys at Class Counsel's firm have purportedly spent 2,164.4 hours collectively in prosecuting this action, for a total lodestar amount of $1,105,490.00. [Doc. 61, at Page ID #:344]. This reflects a lodestar multiplier of 2.53. [Doc. 61, at Page ID #:344].

Rule 23(h), Fed.R.Civ.P. allows a court to award reasonable attorneys' fees. Fed. R. Civ. P. 23(h). Such a payment is "'based on the equitable notion that those who have benefited from litigation should share in its costs.'" *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007). A lawyer who recovers a common fund for a class she represents is entitled to reasonable attorneys' fees and

reimbursement of expenses prior to the distribution of the balance to the class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "Courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Product Liability Lit.*, 654 F.3d 935, 941 (9th Cir. 2011). After all, the district court's discretion is not unlimited, and "[a] conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988).

### 1.  Class Counsel are not entitled to a fee of 35% of the net settlement fund.

In common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000). "It is not the function of the judge in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by the court." *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). This requires the district judge to "ascertain the appropriate rate for cases of similar difficulty and risk, and of similarly limited potential recovery." *Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986).

Here, Class Counsel's request for approximately $2,891,000 in fees is not remotely supported by the record. Contrary to Class Counsel's suggestion, the "market price" for attorneys' fees in a TCPA class is not and should not be considered to be 35%. In *Rose v. Bank of America Corp., et al.*, 2014 WL 4273358 (N.D. Cal. August 29, 2014), the district court observed:

> The Court compared a number of TCPA class action settlements in which attorneys from the instant case participated: in *Grannan*, 2012 WL 216522, a granted request for 25% of the Settlement Fund reflected a multiplier of 1.47. In *Adams v. AllianceOne, Inc.*,

08-CV-248-JAH (S.D. Cal. Sept. 28, 2012), a granted request for 30% of the Settlement Fund reflected a multiplier of 3.81. In *Arthur v. Sallie Mae, Inc.*, 10-CV-198-JLR (W.D. Wash.), a granted request for 20% of the Settlement Fund reflected a multiplier of 2.59.

*Id.* at *10; *see also Arthur v. Sallie Mae, Inc.*, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012). Many courts refuse to award even 30% in TCPA cases, *e.g., Steinfeld v. Discover*, 2014 U.S. Dist. LEXIS 48540, *5 (N.D. Cal. Mar. 31, 2014) (25% of $8.7 million fund, reflecting "multiplier of approximately 3.5").

In recent TCPA cases, given the extremely low risk of these cases in general, courts have commonly awarded a percentage of 20% or less to class counsel. *See, e.g., Bayat v. Bank of the West*, 2015 WL 1744342, at *10 (N.D. Ca. April 15, 2015) (opting for the lodestar method but awarding the equivalent of 13.5% of the over $3.3 million settlement fund); *Rose v. Bank of America Corp.*, 2014 WL 4273358, at *13 (N.D. Ca. Aug. 29, 2014) (choosing the lodestar method and awarding a fee that equated to about 7.5% of the over $32 million fund); *Michel v. WM Healthcare Solutions, Inc.*, 2014 WL 497031, at *23 (S.D. Ohio Feb. 7, 2014) (awarding 15%); *Arthur v. Sallie Mae, Inc.*, 2012 WL 4076119, at *2 (W.D. Wash. Sept. 17, 2012) (awarding 20%).[12]

Other than a self-serving declaration, the bulk of Class Counsel's "evidence" concerns fee awards in other class action settlements. Many of those awards, it appears, were either unopposed or agreed upon by defendants and arrived at after negotiations. In the end, Class Counsel's conclusion that these rates represent "market rates" is well off the mark.

---

[12]Significantly, a lodestar cross-check is also appropriate. *See Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011).

## 2. The lodestar method is the better approach in this case.

In this case, the percentage-of-the-fund method suggested by Class Counsel will inevitably result in over-compensation, but the lodestar method will fairly compensate Class Counsel. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (explaining that the lodestar method has an advantage over the percentage method in that it alleviates "concerns that a percentage approach resulted in over-compensation for attorneys"). Moreover, the choice of methods is discretionary. *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. Ill. 2014) (citations omitted).[13]

District courts are permitted to "adjust the amount up or down to take into account various factors regarding the litigation." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir.

---

[13]To the extent Class Counsel suggests that the Seventh Circuit has abandoned use of the lodestar method, they are wrong. After all, "it is legally correct for a district court to choose either." *Americana Art China*, 743 F.3d at 247. As the Seventh Circuit made clear last year:

> In *Florin v. Nationsbank of Ga., N.A.*, we explained:
>
>> [W]e do not believe that the lodestar approach is so flawed that it should be abandoned. Instead, we are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances. We therefore restate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court.
>
> 34 F.3d 560, 566 (7th Cir. 1994). Whatever position our sister circuits might take, *Florin* is still good law. The district court did not err, much less abuse its discretion, by choosing the lodestar method in this case.

*Americana Art China*, 743 F.3d at 247.

2003). "A district court is certainly empowered to reduce a fee request sua sponte, and indeed it has an independent obligation to scrutinize the legitimacy of such a submission." *Jaffee v. Redmond*, 142 F.3d 409, 416 n.2 (7th Cir. 1998) (internal quotation marks omitted). In applying the lodestar method, the fee petitioner carries the burden of persuasion on whether class counsel's submitted hourly rates are reasonable. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010))

Indeed, a percentage of the fund method may not even be the appropriate way to award Class Counsel a fee in this instance. In fact, the Seventh Circuit very recently affirmed a case where the lodestar method actually made more sense to apply, while emphasizing the need for close judicial scrutiny of fee awards. In *In re Southwest Airlines Voucher Litigation*, Nos. 13-2364. 13-3462, 14-2591, 14-2495, slip op., 2015 U.S. App. LEXIS 14601 (7th Cir. Aug. 20, 2015), the Seventh Circuit upheld the reduction of a fee award – for the same Plaintiff's counsel here, Siprut PC – from $3 million to $1.65 million in a settlement requiring Southwest Airlines to reissue drinks coupons and enjoining it from unilaterally terminating coupon-validity in the future. 2015 U.S. App. LEXIS 14601, [slip op.] at 4, 21-22. Even though the class received just about complete and meaningful relief (a one-for-one re-issuance of the coupons and an injunction against a repeat violation), the district court was correct not to simply defer to "the results of private negotiations," and instead correctly scrutinized the lodestar. 2015 U.S. App. LEXIS 14601, [slip op.] at 21-22.

The facts above and the law in this Circuit appear to demonstrate the unreasonableness of Class Counsel's fee request and indicate that the lodestar method is the appropriate way to assess Class Counsel's value to the Class. In *Americana Art China Co., Inc. v. Foxjire Printing and Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014), the Seventh Circuit affirmed a district court's use of the lodestar methodology in determining a reasonable fee in a TCPA class action. This approach

would be an acceptable methodology to determine fees in this case, with a percentage of recovery cross-check. If the Court does apply a percentage analysis as the primary tool of analyzing attorneys' fees, then it should also apply a lodestar cross-check.

While Class Counsel maintain that the risks they faced in this case justify their 35% fee, the risk they faced was considerably lower than suggested and a 35% fee substantially overcompensates them beyond the rates needed to induce Class Counsel to take on a case of this nature. Therefore, Class Counsel's fee request should be carefully scrutinized.

In one recent settlement – advocated by Class Counsel before this Court – the Court was not impressed with Mr. Siprut's reasoning for seeking what the Court believed was a poorly-contrived and unfair fee:

> At the hearing, Mr. Siprut expressed what it was that purportedly prevented him from negotiating for the class to get some of the settlement fund. He argued, "loud and clear," that class counsel is not obligated to work as an "indentured servant at a loss." He declared that he is running a business, and should not have to put in six months of work for only $35,000, which would be operating at a loss. In his words, counsel is supposed to be incentivized to get as robust a recovery as possible.
>
> Counsel indeed is supposed to get as robust a recovery as possible – for the class members. By doing so, the return on his investment rises with the same tide. Certainly, every attorney hopes that each of his or her cases is a winner, to the point that the fee award will reflect something in the ballpark of the attorney's lodestar, that is, compensation for the actual labor the attorney put into it. But as every attorney knows just as well, not every case is a winner. And in that unfortunate circumstance, whether brought about by miscalculation, bad luck, or unforeseen events – no matter how many hours have been poured in before the awareness of trouble dawns – "the central consideration" for determining the appropriate fee award remains "what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation." *Redman*, 768 F.3d at 633. What Plaintiff's counsel argued (in his

words, "loud and clear") was nothing less than the gravely mistaken view that "class counsel [should be] able to shift the entire risk of the litigation to their clients," *Redman*, 768 F.3d at 635.  Yes, Plaintiff's counsel is not an indentured servant to the class. He is a lawyer to the class, with all its attendant professional responsibilities.  Yes, he is a businessperson too, but like all businesspeople he bears the risks of loss just as he reaps the fruits of profit.  It is unacceptable to mitigate the risk of a relatively small payday by negotiating a settlement at the expense of clients.

In sum, the proposed agreement's division of settlement funds does not satisfy the requirements, as established by the Seventh Circuit, for a reasonable ratio of attorney's fees to class-member recovery.  The proposed settlement can only be characterized as disproportionately benefiting counsel at the expense of class members, who gain little to nothing . . . .

*Grok Lines, Inc. v. Paschall Truck Lines, Inc.*, 2015 U.S. Dist. LEXIS 124812, at *30-32 (N.D. Ill. Sept. 18, 2015).

Mr. Siprut's argument here fares no better.

### 3.     Class Counsel's fee is exorbitant in view of the trifling amount of work completed.

This case was not a typical TCPA class action and the risk encountered – and work performed – by Class Counsel simply fails to warrant a fee of the magnitude requested.  Settlement negotiations began just three months after the complaint was filed and the case was settled at an early stage in the proceedings. In support of their fee motion, Class Counsel submitted a declaration generally attesting to their work and efforts on behalf of the Plaintiff and Class in this case.  Tellingly, they did not provide their billing records.[14]

---

[14]Class Counsel should be required to submit their detailed contemporaneous hours spent in this case for the purpose of conducting a lodestar cross-check against the reasonableness of any proposed percentage fee.

To warrant this fee, Class Counsel argue "multiple attorneys have spent thousands of hours over a two-year period to bring this case to its current posture" [Doc. 67, at Page ID #:552] and "Class Counsel expended substantial effort in achieving this Settlement on behalf of Class Members." [Doc. 61, Page ID #:334] (stating Class Counsel's time totaled 2,164.4 hours). [15] Specifically, Class Counsel's "substantial effort" included:

- Pre-Complaint Factual Investigation;
- Legal Investigation;
- Motion Practice and Discovery;
- Class Counsel and Western Union engaged in private mediation;
- exchanged informal discovery;
- exchanged robust settlement position statements;
- significantly researched class certification issues; and
- Interactions With Clients and the Members of the Class Settlement.

[Doc. 61, at Page ID #:335].

In fact, as demonstrated above, Class Counsel did extraordinarily little work to warrant such a fee. For this, Class Counsel seek an astonishing 35% of the settlement fund.

**D.    The Named Plaintiff's Unearned and Excessive Incentive Award Should Be Reduced.**

Finally, Plaintiff seeks an incentive award in the amount of $5,000 for his "time and effort" expended on behalf of the Settlement Class, to be paid from the Settlement Fund. However, there is no evidence that the Plaintiff did much more than allow his name to be placed on the complaint. He did not participate in formal discovery, execute an affidavit, or testify at trial. He is not entitled to an incentive award of $5,000. Indeed, that sum alone would pay the claims of nearly 150 Class members. An award of $500 would appear a reasonable incentive for Plaintiff's efforts in this case.

---

[15]To put the lodestar into its proper context, the purported 2164.4 hours represents a lawyer working exclusively on this case for a little more than an entire year, 40 hours per week, for 52 weeks, without vacation or holidays.

## V.       ADOPTION OF OTHER OBJECTIONS

Price hereby adopts and incorporates by reference herein all other proper and timely objections submitted by other objectors in this matter to the extent those objections are not inconsistent with this objection.

## VI.      OBJECTION TO UNDULY BURDENSOME OBJECTION PROCEDURES

Price objects to any procedures or requirements imposed that (1) require information or documents not relevant to the propose settlement and the objection made herein, (2) are unnecessary, (3) are calculated to reduce the number of objections or to intimidate Class members from submitting timely objections made in good faith, or (4) violate objector's and her counsel's due process rights and/or Rule 23.

## VII.     NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST TO BE HEARD

Counsel requests that he be allowed to be heard via telephone at the Fairness Hearing.

## VIII.    CONCLUSION

Price respectfully requests that this Court:

1.      Reject the proposed settlement;

2.      Deny Class Counsel's motion for attorney's fees or award Class Counsel a substantially lesser amount than they seek;

3.      Deny the request to award an incentive fee to the named Plaintiff;

4.      Award such other relief as is just and necessary in this matter.

Respectfully submitted, this 22nd day of February, 2016.

/s/ W. Allen McDonald
W. Allen McDonald, Esq.
249 N Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for Bethany Carol Price*

**DECLARATION**

Under penalty of perjury, I do hereby state that I am a resident of the State of North Carolina and a citizen of the United States and that I received one or more unsolicited text messages sent by or on behalf of Western Union between March 12, 2010 and November 10, 2015.

Dated: February 22, 2016

_____
Bethany Carol Price
2410 Donlora Dr.
Greensboro, NC  27407
Telephone: 336-269-4339

**CERTIFICATE OF SERVICE**

I do hereby certify that on February 22, 2016, a copy of the foregoing was served on the

following recipients, via U.S. First Class Mail, postage prepaid:

*Settlement Administrator*
Western Union Text Message Settlement
C/O Epiq Systems, Inc.
P.O. Box 3145
Portland, OR 97208-3145

*Class Counsel*
Joseph J. Siprut
Siprut PC
17 N. State Street
Suite 1600
Chicago, IL 60602

*Defendant's Counsel*
Mark S. Mester
Kathleen P. Lally
Latham & Watkins LLP
330 N. Wabash Avenue
Suite 2800
Chicago, IL 60611

This 22nd day of February, 2016.


/s/ W. Allen McDonald
W. Allen McDonald