**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JASON DOUGLAS, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-1741 |
| Plaintiff, | ) ) | Hon. Gary Feinerman |
| v. | ) ) | Hon. Jeffrey Cole |
| THE WESTERN UNION COMPANY, a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S COMBINED MOTION FOR FINAL APPROVAL
<u>OF CLASS ACTION SETTLEMENT AND RESPONSE TO OBJECTIONS</u>**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Richard L. Miller II
*rmiller@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
S‌IPRUT P‌C
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342
<u>**www.siprut.com**</u>

*Counsel for Plaintiff
and the Settlement Class*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

PROCEDURAL HISTORY ....................................................................................................2

ARGUMENT ...........................................................................................................................6

I.     COMPONENTS OF THE SETTLEMENT ...................................................................6

        A.  The Settlement Class...................................................................................................6

        B.  Benefit To Settlement Class Members ......................................................................6

        C.  Incentive Award To Class Representative .................................................................7

        D.  Attorneys' Fees And Costs .........................................................................................7

II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED
       BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23 ...........................7

        A.  Numerosity – F.R.C.P. 23(a) .....................................................................................8

        B.  Commonality/Predominance – F.R.C.P. 23(a)(2) and 23(b)(3)..............................9

        C.  Typicality – F.R.C.P. 23(a)(3) .................................................................................11

        D.  Adequacy Of Representation – F.R.C.P. 23(a)(4) ..................................................12

        E.  Superiority – F.R.C.P. 23(b)(3) ...............................................................................13

III.   THE SETTLEMENT IS FAIR
       AND SHOULD RECEIVE FINAL APPROVAL...........................................................14

        A.  Strength Of The Case Measured Against The Settlement ....................................16

            1.    Western Union's Asserted Defenses ............................................................16

            2.    The Settlement Is Among The Most Superior TCPA Class Action
                Settlements Of All Time ..............................................................................18

        B.  The Complexity, Length, And Expense Of Continued Litigation .........................20

        C.  The Settlement Class' Reaction And Lack Of Opposition To The Settlement .....21

        D.  Class Counsel's Opinion...........................................................................................22

        E.  The Stage Of The Proceedings And The Amount Of Discovery Completed ........23

IV.   THE COURT-APPROVED NOTICE PROGRAM SATIFIES DUE PROCESS............24

V.    THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED ...............25

        A.  Objectors Price Lacks Standing ...............................................................................25

        B.  Objectors Price and Pamela Sweeney Lack Standing............................................26

        C.  Objections To Relief Provided To Class Members ...............................................27

        D.  Objections To Attorneys' Fees .................................................................................28

            1.    The Objectors Improperly Rely

       On The Ninth Circuit's Benchmark ...............................................................29

  2.  The Lodestar Method Is Not Warranted And,
      Even If It Was, Class Counsel Requests A Reasonable Multiplier ...............31

F.  Objection To Plaintiff's Incentive Award..............................................................32

G.  Objection To Objection Procedure .......................................................................32

H.  Objection To Claims Administration....................................................................33

I.  Objection To Time-Frame For Issuing Checks To Class Members .....................34

J.  Objection Regarding A Cy Pres Procedure ..........................................................34

K.  Objection To Class Definition ..............................................................................35

CONCLUSION.......................................................................................................................37

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................................ 8, 17

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)................................................................................................................ 20

*Carson v. Am. Brands, Inc.*,
450 U.S. 79, 88 n.14 (1981).................................................................................................... 19

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000).................................................................................................................. 22

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)............................................................................................................ 11

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Agretti v. ANR Freight Sys., Inc.*,
982 F.2d 242 (7th Cir. 1992) .................................................................................................. 25

*Andermann v. Sprint Spectrum L.P.*,
785 F.3d 1157 (7th Cir. 2015) ................................................................................................ 16

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*,
747 F.3d 489 (7th Cir. 2014) .................................................................................................... 8

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013). ................................................................................................ 10

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) .................................................................................................. 12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ............................................................................................ 15, 16

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ................................................................................................ 15

*Gould v. Alleco, Inc.*,
883 F.2d 281 (4th Cir. 1989) .................................................................................................. 26

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) *appeal pending*, No. 15-1490 (7th Cir.) ...................... *passim*

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 2010) ...................................................................... 23

*In re Synthroid Marketing Litigation*,
325 F.3d 974 (7th Cir. 2003) ...................................................................... 29

*In re Trans Union Corp. Privacy Litig.*,
629 F.3d 741 (7th Cir. 2011) ...................................................................... 30

*Ira Holtzman, C.P.A. v. Turza*,
728 F.3d 682 (7th Cir. 2013) ...................................................................... 11

*Marcial v. Coronet Ins. Co.*,
880 F.2d 954 (7th Cir. 1989) ...................................................................... 8

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ...................................................................... 36

*Patterson v. Gen. Motors Corp.*,
631 F.2d 476 (7th Cir. 1980) ...................................................................... 9

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ...................................................................... 30

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) ...................................................................... 7, 30

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ...................................................................... 9

*Swanson v. Am. Consumer Indus., Inc.*,
415 F.2d 1326, 1333 n.9 (7th Cir. 1969) .................................................... 9

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ...................................................................... 15, 16

## UNITED STATES DISTRICT COURT CASES

*Allen v. JP Morgan Chase Bank, N.A.*,
No. 13-cv-08285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015) .................................. 18, 20, 21

*Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*,
235 F. Supp. 2d 816 (N.D. Ill. 2002) .......................................................... 15

*Arthur v. Sallie Mae, Inc.*,
No. 10-CV-00198-JLR, 2012 WL 4075238 (W.D. Wash. Sept. 17, 2012).................... 19, 29, 30

*Bayat v. Bank of the West*,
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ................................. 19, 21

*Carnegie v. Household Int'l, Inc.*,
445 F. Supp. 2d 1032 (N.D. Ill. 2006) .................................................................................... 25

*Chimeno-Buzzi v. Hollister Co.*,
No. 14-23120-CIV, 2015 WL 9269266 (S.D. Fla. Dec. 18, 2015).......................................... 19

*Couser v. Comenity Bank*,
No. 12CV2484-MMA-BGS, 2015 WL 5117082 (S.D. Cal. May 27, 2015)................... 19, 20, 21

*Douglas v. W. Union Co.*,
No. 14-CV-1741, 2015 WL 9302316 (N.D. Ill. Nov. 10, 2015) ......................................... *passim*

*Gehrich v. Chase Bank USA, N.A.*,
No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ................................................ *passim*

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987).............................................................................................. 13

*Hinman v. M & M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ...................................................................................... 12

*Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) ......................................................................................... 14

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................................. 22, 32

*In re Checking Account Overdraft Litig.*,
830 F.Supp.2d 1330, 1336 n.3 (S.D. Fla. 2011) ..................................................................... 27

*In re Mexico Money Transfer Litig.*,
164 F.Supp.2d 1002 (N.D. Ill. 2000) ...................................................................................... 22

*In re Neopharm, Inc. Secs. Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004)............................................................................................... 12

*In re Sw. Airlines Voucher Litig.*,
No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013).......................................... 22, 26, 32

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................................ 26

*Kaplan v. Houlihan Smith & Co.*,
No. 12 C 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) ...................................... 26

*Kaufman v. Am. Express Travel Related Servs., Co.*,
No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016)................................... 7, 14

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)........................................................................... *passim*

*Lopez v. Bank of Am., N.A.*,
No. 10-CV-01207-JST, 2015 WL 5064085 (N.D. Cal. Aug. 27, 2015)....................... 26

*Maxwell v. Arrow Fin. Servs., LLC*,
No. 03 C 1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ......................................... 8

*Michel v. WM Healthcare Sols., Inc.*,
No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014) ................................... 29

*Miller v. Ghirardelli Chocolate Co.*,
No. 12-CV-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015).......................... 26

*Moore v. Verizon Commc'ns Inc.*,
No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013).......................... 27

*Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*,
No. 3:14-CV-00645-ST, 2016 WL 54678 (D. Or. Jan. 5, 2016) ........................... 19, 21

*Perkins v. Linkedin Corp.*,
No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016)....................... 26

*Pope v. Harvard Banchares, Inc.*,
240 F.R.D. 383 (N.D. Ill. 2006)..................................................................................... 9

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003)................................................................................... 11

*Rose v. Bank of Am. Corp.*,
No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)............... 19, 20, 21, 29

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992)..................................................................................... 9

*Schulte v. Fifth Third Bank,*
805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................. 22, 23, 33

*Smith v. Nike Retail Servs., Inc.,*
234 F.R.D. 648 (N.D. Ill. 2006) ................................................................................. 8

*Smith v. State Farm Mut. Auto. Ins. Co.,*
30 F. Supp. 3d 765 (N.D. Ill. 2014) ......................................................................... 17

*Standard Iron Works v. ArcelorMittal,*
No. 08 C 5214, 2015 WL 6165024 (N.D. Ill. Oct. 20, 2015) ................................... 26

*Steinfeld v. Discover Fin. Servs.,*
No. C 12-01118 JSW, 2014 WL 1309692 (N.D. Cal. Mar. 31, 2014) .................... 29, 30

*Whitten v. ARS Nat'l Servs. Inc.,*
No. 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) .................................. 10

*Wilkins v. HSBC Bank Nevada, N.A.,*
No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) .................................. *passim*

## STATUTES AND FEDERAL RULES

47 C.F.R. §64.1200 ..................................................................................................... 44

47 U.S.C. § 227 ...................................................................................................... 21, 44

Fed. R. Civ. P. 23 ............................................................................................... *passim*

## OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (Fourth) ............................................................ 29

NEWBERG ON CLASS ACTIONS (4th ed. 2001 & 2002) ................................................ 9

**<u>EXHIBIT LIST</u>**

Settlement Agreement and Release ................................................................................Exhibit 1

Affidavit of Joseph J. Siprut .......................................................................................Exhibit 2

Declaration of Ricky Borges........................................................................................Exhibit 3

Transcript of November 10, 2015, Hearing ...................................................................Exhibit 4

Pursuant to Fed. R. Civ. P. 23, Plaintiff Jason Douglas ("Plaintiff"), by his counsel, respectfully submits his Combined Motion For Final Approval Of Class Action Settlement And Response To Objections (the "Motion"). For the reasons detailed below, Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement as fair, reasonable, and adequate.[1]

## **INTRODUCTION**

This Settlement in this case is ***one of the best*** TCPA class action settlements ever. It outranks all other recent multi-million dollar, TCPA class action settlements on a fund-to-class-size basis and ranks among is the best on an actual-payout-to-class-member basis. Further, the claims-rate is among the highest and the opposition-rate is among the lowest.

The Settlement is an $8,500,000 cash, non-reversionary, common fund (the "Fund"). All expenses, including payments to Settlement Class Members, notice and administration costs, attorneys' fees, and the incentive award are paid out of the Fund. After this Court granted preliminary approval of the Settlement, extensive notice was given to Settlement Class Members in accordance with the Settlement Agreement and the Preliminary Approval Order. *Douglas v. W. Union Co.*, No. 14-CV-1741, 2015 WL 9302316, at *3 (N.D. Ill. Nov. 10, 2015). Notice reached an astonishing 97.9% of the Settlement Class. There were 54,316 claims filed. Only 22 persons sought to be excluded, and only four persons objected to the Settlement – one of which is not a Class Member and, hence, lacks standing to object. None of these objections have merit and each of them should be overruled.

As such, since the Settlement Class has overwhelmingly approved the Settlement after being provided more than adequate notice, and since the Settlement is demonstrably one of the

---

[1] Unless otherwise stated, all terms in this brief are intended to have the definitions assigned to them in the Settlement Agreement, attached hereto as Exhibit 1.

best TCPA settlements ever that meets or exceeds the requisite standards, this Settlement should now receive final approval.

## **PROCEDURAL HISTORY**

On March 12, 2014, Plaintiff filed his Class Action Complaint against Defendant The Western Union Company ("Western Union") seeking to represent a proposed class of all individuals or entities who allegedly received unsolicited text messages to their wireless telephones from or on behalf of Western Union. (Dkt. No. 1.)

After effecting service on Western Union, this Court set an initial status hearing for May 7, 2014, and required Plaintiff and Western Union (collectively, the "Parties") to file an initial status report by April 30, 2014. (Dkt. No. 9.) On April 3, 2014, Western Union moved for an extension of time to answer or otherwise plead. (Dkt. No. 14.)

Meanwhile, on April 30, 2014, the Parties filed a Joint Initial Status Report (the "Initial Report"). (Dkt. No. 20.) During the Parties' scheduling conference and in the Initial Report, Western Union contended that Plaintiff's claims are be subject to an arbitration agreement. (*Id.* at ¶5.) Western Union stated that absent an agreement to submit the claim to arbitration, Western Union would move to compel arbitration. (*Id.*) On May 5, 2014, this Court issued a Minute Entry stating that if Western Union intended to file a motion to compel arbitration, it should notice the motion for presentment at the initial status hearing. (Dkt. No. 21.) That same day, however, Western Union filed its Answer, denying the substance of the allegations and raising *30 affirmative defenses*. (Dkt. No. 22.) At the initial status hearing on May 7, 2014, this Court stayed discovery until 14 days after the Court's ruling on Western Union's anticipated motion to compel arbitration. (*Id.*)

On May 27, 2014, Plaintiff filed his Motion To Strike Western Union's Affirmative Defenses. (Dkt. No. 24.) Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiff

sought to strike each of Western Union's 30 affirmative defenses. During this time, the Parties had numerous communications and exchanges, and discussed potential mediation tracks. At a June 12, 2014, hearing, Parties reported that they intended to engage in private mediation. (Dkt. No. 26.) Accordingly, Plaintiff agreed to withdraw his pending motion to strike without prejudice. (*Id.*) This Court ordered formal discovery to remain stayed pending further order. (*Id.*)

Between June and September 2014, the Parties continued to exchange information and worked on selecting an appropriate mediator. (Affidavit Of Joseph J. Siprut (the "Siprut Aff."), attached hereto as Exhibit 2, ¶9.) At a September 9, 2014, hearing, the Parties reported that a mediation was scheduled for early October. (Dkt. No. 27.) On October 9, 2014, the Parties, as well as a representative from Western Union's insurer, CNA, attended a mediation at JAMS Resolution Center. Retired District Judge Wayne R. Andersen served as the Parties' mediator. (Dkt. No. 28.) After multiple submissions to Judge Andersen and still more information exchanged, the Parties conducted negotiations for a full day, but were unable to reach a resolution. (*Id.*) Nevertheless, the Parties agreed to continue negotiations with Judge Andersen.

Between October 2014 and February 2015, the Parties continued numerous discussions on a tri-lateral basis, as Western Union's insurer continued to play a role. (Dkt. No. 30.) On February 27, 2015, the Parties engaged in *another* full-day session of mediation in New York with Judge Andersen presiding. (Dkt. No. 36.) That session again concluded with no agreement. The Parties continued their negotiations, and Plaintiff meanwhile refiled his pending Motion For Class Certification, pursuant to the Court's instruction. (Dkt. Nos. 34, 35, 37.)

On April 22, 2015, the Parties reported that they had reached an agreement in principle, resolving Plaintiff's claims on a class-wide basis. (Dkt. No. 39.) The Parties then spent four more months exchanging drafts of a final, written settlement agreement. (Siprut Aff. ¶11.) After many

exchanges of edits, the Parties were finally able to agree to the form and content of a settlement agreement in late July 2015. (Dkt. No. 52-1.)

In the Agreement, Plaintiff negotiated additional confirmatory discovery given that the Court had previously stayed formal discovery. (Dkt. No. 52-1 at Part VII.) In addition, the Parties stipulated to an Agreed Confidentiality Order, entered by the Court on August 28, 2015. (Dkt. No. 46.) Western Union conducted a search of its records for two instances in which text messages were arguably sent without any authorization. (Dkt. No. 94.) Thereafter, Western Union produced thousands of pages of documents, including lists of 868,805 entries of potential Settlement Class Members. (Siprut Aff. ¶12.) After conducting a comprehensive review of the documents, the Parties and the court-appointed Settlement Administrator determined that there 741,800 unique entries representing Settlement Class Members. The list of the 741,800 Settlement Class Members was used as the list of persons to whom notice would be directed (the "Notice List"). The Notice List contains the names and last known addresses and mobile numbers for each Settlement Class Member. (*Id.*) In addition, the Notice List contains the last known email addresses for a subset of the Settlement Class Members. (*Id.*) Plaintiff also reviewed documents regarding the manner in which the text messages were sent, including the involvement of third parties and the equipment used to send the text messages. (*Id.*)

On October 28, 2015, Plaintiff filed his Motion For Preliminary Approval Of Class Action Settlement (Dkt. No. 52), which this Court granted on November 10, 2015. *W. Union*, 2015 WL 9302316, at *3. On February 8, 2016, Plaintiff filed his Motion For Attorneys' Fees, Costs, And Incentive Award, requesting the Court to award attorneys' fees in the amount of 35% of the Fund after notice and administration costs are deducted, and an incentive award to Plaintiff in the amount of $5,000. (Dkt. No. 61.) The Settlement Administrator's current costs are

$481,142.09 and are capped at $553,197. (Declaration Of Ricky Borges Regarding Notice And Settlement Administration (the "Borges Decl."), attached hereto as Exhibit 3, ¶16.)

Three sets of objections have been filed by John Knott ("Knott"), Bethany Price ("Price"), Patrick A. Sweeney, who filed a joint objection with his wife, Pamela A. Sweeney (together the "Sweeney Objectors") (collectively, the "Objectors"). On February 18, 2016, Knott filed his objection to the Settlement. (Dkt. No. 67.) On February 22, 2016, Price filed her objection to the Settlement. (Dkt. No. 69.) On February 25, 2016, *three days after the Objection Deadline of February 22, 2016*, the Sweeney Objectors filed their joint objection to the Settlement. (Dkt. No. 70.)

On March 3, 2016, Plaintiff filed a motion to depose the Objectors. (Dkt. No. 72.) Objectors Knott and Price filed responses in opposition (Dkt. Nos. 77 & 78) and Plaintiff filed a reply in support (Dkt. No. 80). At a March 17, 2016, hearing, this Court denied Plaintiff's motion without prejudice and directed Plaintiff to provide a supplemental filing regarding objector Price's lack of standing and the scope of the Settlement Class. (Dkt. No. 87.) On April 1, 2016, the Parties submitted their respective supplemental filing addressing the Court's questions. (Dkt. Nos. 93, 94.)

The Court has set the Final Fairness Hearing for April 25, 2016, at 2:00 p.m. (Dkt. No. 92.) Accordingly, Plaintiff now submits his brief in support of final approval of the Settlement and his responses to the objections.

<u>**ARGUMENT**</u>

**I.**     **COMPONENTS OF THE SETTLEMENT.**

    **A.**     **The Settlement Class.**

The Settlement Class provisionally certified by this Court on November 10, 2015 is defined as:

> All Persons in the United States who received one or more unsolicited text messages sent by or on behalf of Western Union between March 12, 2010 and November 10, 2015.

*W. Union*, 2015 WL 9302316, at *1.

    **B.**     **Benefits To Settlement Class Members.**

Under the Settlement, each Settlement Class Member who submits a Valid Claim, shall receive one pro rata share of the $8.5M Settlement Fund, after the Notice and Administration Costs (currently $481,142.09), Plaintiff's requested Attorneys' Fee Award (35% of the Fund $2,804,850.27), and Incentive Award ($5,000) have been deducted from the Settlement Fund (the "Net Settlement Fund"). Assuming this Court grants Class Counsel's requested fees of 35% of the Fund and Plaintiff's requested incentive award of $5,000, Class Counsel estimates that Net Settlement Fund will be equal to $5,209,007.64.[2] Accordingly, the 54,315 individuals who submitted timely and valid claims will each receive approximately $95.90 ($5,209,007.64 / 54,315).[3]

---

[2] As the Settlement Administrator's costs approach the cap of $553,197, the Net Settlement Fund and Class Counsel's Fee Award will go down. Assuming the Settlement Administrator costs meet the cap, the Net Settlement Fund is estimated to be $5,162,171.95 and Class Counsel's Fee Award, at 35%, would be $2,779,631.05.

[3] Plaintiff suggests denying the claim filed by objector Price, because she is not a Settlement Class Member. (Dkt. Nos. 93, 94.) Hence, Plaintiff calculated the estimated payout using 54,315 claims, instead of 54,316 claims. (*See* Borges Decl. ¶¶11, 13.)

### C. Incentive Award to Class Representative.

Subject to Court approval, Plaintiff requests a service award of $5,000 in recognition of its contributions to the Class, the time it spent assisting with the prosecution of this case, and the risk it incurred in commencing the action, both financial and otherwise. (Dkt. No. 61.)

### D. Attorneys' Fees and Costs.

Class Counsel requests total fees and expenses in the amount of 35% of the Fund after the deduction of notice and administration costs and incentive award. Using the current administration costs of $481,142.09, Class Counsel's Fee Award would be $2,804,850.27 (($8,500,000 − $481,142.09 − $5,000) x 0.35 = $2,804,850.27). Of course, as the Settlement Administrator's costs approach the cap of $553,197, Class Counsel's Fee Award will go down. This amount easily satisfied the ratio articulated by the Seventh Circuit in *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014): "(1) the fee to (2) the fee plus what the class members received." Here, *Redman* ratio is 35% ($2,804,850.27 / ($2,804,850.27 + $5,209,007.64). *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *13 (N.D. Ill. Mar. 2, 2016) (Gottschall, J.) (awarding fees with a *Redman* ratio of 34.8%, even where settlement was amended *several* times to address deficiencies).

## II. THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23.

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Rule 23(b)(1)…."). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved

the use of the class settlement device." *Id.* at 618. Plaintiff seeks conditional certification of the Settlement Class under Rule 23(b)(3), its appointment as class representative solely for the purposes of the Settlement, and appointment of its counsel as Class Counsel solely for the purposes of the Settlement.

The Plaintiff requests that the Court, for the purposes of settlement, certify the Settlement Class defined above. As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

### A.   Numerosity – Federal Rule Of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is neither a specific number required to satisfy this requirement, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006) ("[A] plaintiff need not identify each class member or even provide an exact number of class members to satisfy that element.") (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989)); 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004). "[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). "Although no magic number exists for satisfying the numerosity requirement, the Seventh Circuit has held that '[e]ven if the class were limited to 40 [members] … that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the

class are widely scattered and their holdings are generally too small to warrant undertaking individual actions.'" *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) (Feinerman, J.) (quoting *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)); *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006) (granting class certification, distinguishing that "impracticable" does not mean "impossible," but rather extremely difficult and inconvenient).

In this case, there were approximately 741,800 Settlement Class Members were sent unsolicited text messages. (Siprut Aff. ¶12.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

**B.     Commonality/Predominance –**
**Federal Rule Of Civil Procedure 23(a)(2) And 23(b)(3).**

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) (citing *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)), *cert. denied*, 451 U.S. 914 (1980)), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (granting class certification, characterizing the commonality requirement as "a low hurdle" easily surmounted). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011)

("[C]ommonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "Defendants have engaged in standardized conduct toward the members of the proposed class").

The Settlement Class shares common questions of fact and law that predominate over issues affecting only individual Settlement Class Members. Those common factual and legal issues include:

(1)     Whether Western Union used an automatic telephone dialing system to send text messages;

(2)     The manner in which Western Union compiled or obtained mobile phone numbers;

(3)     Whether Western Union obtained the requisite consent to send text messages; and

(4)     Whether Western Union violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Chase Bank*, 2016 WL 806549, at *5 (N.D. Ill. Mar. 2, 2016) ("A proposed class satisfies Rule 23(b)(3) if 'the questions of law or fact common to class members predominate over any questions affecting only individual members . . . .'"). "Predominance . . . is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013). A class action is the more efficient procedure for determining liability and damages in a case such as this, where "loss, and the statutory

remedy, are the same for all recipients[.]" *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318 (2014).

In this case, common questions predominate for the Settlement Class because Western Union's alleged unlawful conduct presents common questions with regard to all proposed Settlement Class Members. *Holtzman*, 728 F.3d at 684 ("Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients."). Thus, in the context of the proposed class-wide settlement, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of Western Union's conduct. *Chase Bank*, 2016 WL 806549, at *4 (Feinerman, J.) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (Kennelly, J.) ("Each class member suffered the same alleged injury, namely, receipt of at least one prerecorded prescription refill reminder call to the class member's cellular telephone without the recipient's prior express consent.").

### C.    Typicality – Federal Rule Of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is

liberally construed." *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Settlement Class all received unsolicited text messages from Western Union, and alleged that Western Union sent, or had sent on its behalf, the text messages in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to statutory damages. *Chase Bank*, 2016 WL 806549, at *4 (Feinerman, J.) ("Because 'typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members,' the fact that some class members . . . may have consented to the calls and alerts, or that some class members signed arbitration clauses extinguishing their TCPA claims, does not vitiate the typicality of the class representatives' claims.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)); *Walgreen*, 311 F.R.D. at 491 ("Typicality is satisfied when the named plaintiff's claim and those of the class members have a common legal theory, even if there are some factual variations."). Accordingly, Plaintiff's claims are typical of the other Settlement Class Members' claims.

### D.     Adequacy Of Representation – Federal Rule Of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that they: "(1) [have] a sufficient stake in the outcome to ensure zealous advocacy, and [have] no claims antagonistic to or conflicting with the claims of other class members, and (2) [are] represented by qualified, experienced counsel." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the

complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (finding class counsel was adequate stating if "attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again.").

Here, Plaintiff's interests are consonant with the interests of the Settlement Class – obtaining relief from Western Union for its alleged unlawful transmission of text messages. Plaintiff has no interests antagonistic to the interests of the other Settlement Class Members. (Siprut Aff. ¶18.) Moreover, Plaintiff's counsel has been appointed lead Counsel in many class actions across the country, and has substantial experience in consumer class actions involving similar issues, scope, and complexity. (*Id.* ¶17; Siprut Firm Resume (attached as Exhibit A to the Siprut Aff.).) Accordingly, Plaintiff and his counsel would adequately represent the proposed Class. *Walgreen*, 311 F.R.D. at 492 ("[C]ass counsel have performed satisfactorily on behalf of the class and have demonstrated their competence in representing the class's interests.").

## E.     Superiority – Federal Rule of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the other Settlement Class Members' claims. The burden and expense of individual prosecution makes a class action superior to other available methods of resolution. Thus, absent a class action, Plaintiff contends it would be difficult, if not impossible, for individual members of the Settlement Class to obtain effective relief.

In sum, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified.[4]

III.    THE PROPOSED SETTLEMENT IS FAIR
        AND SHOULD RECEIVE FINAL APPROVAL.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) ("We also consider the facts "in the light most favorable to the settlement."); *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the

---

[4] As detailed in the Settlement Agreement, Western Union do not oppose the request for class certification solely for the purposes of settlement.

facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and has identified several factors for analyzing whether a class action settlement should be given final approval including: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997) (affirming finding that settlement was fair under similar six-factor analysis.); *Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002) (same).

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *Hiram Walker*, 768 F.2d at 889 *cert. denied*, 478 U.S. 1004 (1986) ("The district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights."); *Isby*, 75 F.3d at 1196-97 (declining objecting members' invitation to determine merits of legal issues that remain unresolved, stating this was a "necessary consequence of settlement."). Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful

resolution *after* trial." *Hiram Walker*, 768 F.2d at 889 (emphasis original). Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

### A. Strength Of The Case Measured Against The Settlement.

"The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Wong*, 773 F.3d at 864.

### 1. Western Union's Asserted Defenses.

Plaintiff alleges that Western Union violated the TCPA by sending text messages unwilling recipients. Plaintiff contends that Western Union did so without prior express written consent. Plaintiff thus claims that he and the Class are entitled to statutory or actual damages, injunctive relief, and other equitable relief this Court deems appropriate.

Western Union has principally contended that Plaintiff's and the Settlement Class Members' claims are subject to arbitration. According to Western Union, text messages are sent to people who have registered an online account with Western Union and thereby agreed to Western Union's Terms & Conditions, which require any dispute arising from or relating to the use of Western Union's services to be submitted to arbitration. *See Andermann v. Sprint Spectrum L.P.*, 785 F.3d 1157, 1159 (7th Cir. 2015) (requiring plaintiffs alleging violations of the TCPA to arbitrate claims). The arbitration agreements also included a class action waiver, which (if enforced) would extinguish any possibility of a class-wide recovery. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-45 (2011) (upholding arbitration provisions with class action waivers). Western asserts that even if some Settlement Class Members had opted out

of the arbitration provision and class action waiver, thousands of individual, fact-intensive inquiries would preclude class certification.

Further, Western Union contends that it obtained the requisite consent from Settlement Class Members, like Plaintiff, to be called (or, as in this case, to be sent text messages) because they voluntarily provided their wireless telephone numbers during the account registration process. On Western Union's view, prior express *written* consent, which requires more than mere voluntary provision of the number, is not required, because the text messages at issue do not introduce an advertisement. Thus, based on the issue of consent, Western Union believes that it will be able to both defeat Settlement Class Members' claims on the merits and at class certification, even if the arbitration provision and class action waiver do not apply.

In addition, Western Union asserts that the equipment used to send the text messages at issue does not qualify as an automatic telephone dialing system and that Western Union is not liable because a third party sent the text messages. *See* 47 U.S.C. § 227(b)(1)(A) (use of an autodialer is an element of a TCPA claim); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 774 (N.D. Ill. 2014) ("[T]he Court finds that the FCC's determination that an entity may be vicariously liable for violation of section 227(b) under a broad range of common-law agency principles is correct."). Clearly, one of the factors to be considered as to the fairness of a class action settlement is Western Union's willingness and ability to mount just such a vigorous defense.

As explained above, the Settlement allows Settlement Class Members to receive direct, monetary relief. While Plaintiff believes that his claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If Western Union were to prevail on its asserted defenses, Settlement

-17-

Class Members, including Plaintiff, would receive no relief *at all*. And if Western Union were correct about the applicability of an arbitration agreement, each Settlement Class Member would individually have to bear the burden of prosecuting their claims through arbitration—a common deterrent to individuals seeking legal recourse. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 81 (2000) ("[T]he existence of large arbitration costs may well preclude a litigant like Randolph from effectively vindicating such rights.").[5]

### 2. This Settlement Is Among The Most Superior TCPA Class Action Settlements Of All Time.

Class Counsel's review of recent TCPA settlements from across the country empirically establishes that the Settlement here outranks virtually of the significant TCPA settlements to precede it. As illustrated below, on an apples-to-apples basis (comparing settlement common funds to class sizes), Settlement Class Members have the opportunity to receive more than double (and in some cases more than triple) what class members have received in other court-approved TCPA settlements:

| CASE | CLASS SIZE | AMOUNT OF FUND | RATE/MEMBER |
|---|---|---|---|
| *Western Union*[6] | **741,800** | **$8,500,000** | **$11.46** |
| *JPMorgan*[7] | 2,078,559 | $10,200,000 | $4.91 |
| *HSBC*[8] | 9,065,262 | $40,000,000 | $4.41 |
| *Capital One*[9] | 17,522,049 | $75,500,000 | $4.31 |

[5] *See also* Consumer Financial Protection Bureau, Study Finds That Arbitration Agreements Limit Relief For Consumers 1 (Mar. 10, 2015) (finding "very few consumers individually seek relief through arbitration and the courts, while millions of consumers obtain relief each year through class action settlements"); Daniel Higginbotham, Buyer Beware: Why The Class Arbitration Waiver Clause Presents Gloomy Future For Consumers, 58 Duke L.R. 103 (2008) ("'If [mandatory arbitration] catches on, it could wipe out years of progress in consumer protection.'").

[6] *Douglas v. W. Union Co.*, No. 14-CV-1741, 2015 WL 9302316, at *5 (N.D. Ill. Nov. 10, 2015).

[7] *Allen v. JP Morgan Chase Bank, N.A.*, No. 13-cv-08285, Dkt. No. 93 (N.D. Ill. Oct. 21, 2015).

[8] *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *5 (N.D. Ill. Feb. 27, 2015).

[9] *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) *appeal pending*, No. 15-1490 (7th Cir.).

| | | | |
|---|---|---|---|
| *Bank of America*[10] | 7,723,000 | $32,000,000 | $4.14 |
| *Bank of the West*[11] | 871,836 | $3,400,000 | $3.90 |
| *Sallie Mae*[12] | 8,000,000 | $24,200,000 | $3.03 |
| *Hollister*[13] | 3,738,465 | $10,000,000 | $2.67 |
| *Comenity Bank*[14] | 4,000,000 | $8,500,000 | $2.13 |
| *Mortgage Investors*[15] | 3,552,434 | $7,483,600 | $2.11 |
| *Walgreen*[16] | 9,166,667 | $11,000,000 | $1.20 |
| *Chase*[17] | 32,297,356 | $34,000,000 | $1.05 |

Moreover, assuming 54,315 claims are paid, this Settlement is also among **the top four**

compared to other TCPA class action settlements:

| CASE | ACTUAL PAYOUT |
|---|---|
| *Bank of the West*[18] | $151 |
| *Mortgage Investors*[19] | $140.86 |
| *Sallie Mae*[20] | $100 |
| ***Western Union***[21] | **$95.90** |

---

[10] *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *1 (N.D. Cal. Aug. 29, 2014) *reconsideration denied sub nom. Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2015 WL 1969094 (N.D. Cal. May 1, 2015).

[11] *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015).

[12] *Arthur v. Sallie Mae, Inc.*, No. 10-CV-00198-JLR, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012).

[13] *Chimeno-Buzzi v. Hollister Co.*, No. 14-23120-CIV, 2015 WL 9269266, at *2 (S.D. Fla. Dec. 18, 2015).

[14] *Couser v. Comenity Bank*, No. 12CV2484-MMA-BGS, 2015 WL 5117082, at *2 (S.D. Cal. May 27, 2015).

[15] *Ott v. Mortgage Inv'rs Corp. of Ohio, Inc.*, No. 3:14-CV-00645-ST, 2016 WL 54678, at *8 (D. Or. Jan. 5, 2016).

[16] *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015).

[17] *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *19 (N.D. Ill. Mar. 2, 2016) (Feinerman, J.)

[18] *Bank of the West*, 2015 WL 1744342, at *3.

[19] *Mortgage Inv'rs*, 2016 WL 54678, at *8.

[20] *Sallie Mae, Inc.*, 2012 WL 4075238, at *1.

[21] As of March 31, 2016, the Settlement Administrator received 54,316 claims. (Borges Decl. ¶13.) Of the total claims received, 21,420 claims forms were: (a) not submitted with unique identifiers that were provided in the notice packets to the Settlement Class; and (b) do not match two personal identifiers, *e.g.*, name, address, phone number, e-mail address, on the Notice List. (Dkt. No. 93.) Subject to the Settlement Administrator completing a review for fraud, the Parties may nevertheless approve these 21,420 claims except for the claim filed by objector Price because she is not a Settlement Class Member. If, however, these 21,420 claims are *not*

| | |
|---|---|
| *HSBC*[22] | $93.22 |
| *JPMorgan*[23] | $70.25 |
| *Chase*[24] | $52.50 |
| *Capital One*[25] | $34.60 |
| *Bank of America*[26] | $20 - $40 |
| *Walgreen*[27] | $30 |
| *Comenity Bank*[28] | $13.75 |

Given that these settlements have been deemed fair, adequate, and reasonable, there should be no doubt that this Settlement readily satisfies these same standards of Rule 23.

### B. The Complexity, Length, And Expense Of Continued Litigation.

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of Western Union's current and former employees. Western Union intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. Western Union would present – and Plaintiff would necessarily attempt to rebut – evidence and testimony on whether: (1) individual Class Members provided the requisite consent to Western Union; (2) individual Class Members assented to arbitration and a class action waiver; (3) Western Union used an automatic telephone dialing system within the meaning of the TCPA; and (4) Western Union is liable for the conduct of a third party. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would

---

approved, then the resulting benefit to the Settlement Class would be $158.34, making this the ***best*** TCPA Settlement of all.
[22] *HSBC*, 2015 WL 890566, at *5.
[23] *JP Morgan*, No. 13-cv-08285, Dkt. No. 83.
[24] *Chase Bank*, 2016 WL 806549, at *19.
[25] *In re Capital One*, 80 F. Supp. 3d at 790.
[26] *Bank of Am.*, 2014 WL 4273358, at *1.
[27] *Walgreen*, 311 F.R.D. at 493.
[28] *Comenity Bank*, 2015 WL 5117082, at *2.

require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### C. The Settlement Class' Reaction And Lack Of Opposition To The Settlement.

Since this Court granted preliminary approval of the Settlement on November 10, 2015, of the approximate 741,800-member Settlement Class, 54,316 individuals have claim forms.[29] The resultant claims-rate in this Settlement is approximately 7.32% (54,316 / 741,800). This claims-rate ranks among the ***top three*** of recent, multi-million dollar TCPA class action settlements:

| CASE | CLAIMS RATE |
|---|---|
| *Capital One*[30] | 7.87% |
| *Comenity Bank*[31] | 7.70% |
| ***Western Union*** | **7.32%** |
| *JPMorgan*[32] | 4.05% |
| *HSBC*[33] | 3.16% |
| *Bank of America*[34] | 2.95% |
| *Walgreen*[35] | 2.51% |
| *Bank of the West*[36] | 1.90% |
| *Chase*[37] | 1.08% |
| *Mortgage Investors*[38] | 0.08% |

Further, only 22 individuals have opted-out and only four have objected. (Borges Decl. ¶¶11, 12.) The resultant opt-out/objection percentage is *extremely* low: **0.000035%** (26 / 741,800). Courts, including this one, routinely find "extremely low percentage[s] of opposition

---

[29] Of the 54,316 claims submitted, 31 claims were submitted after the February 22, 2016, claims deadline. (Borges Decl. ¶13.) Class Counsel recommends approving these claims.

[30] *In re Capital One*, 80 F. Supp. 3d at 786.

[31] *Comenity Bank*, 2015 WL 5117082, at *7.

[32] *JP Morgan*, No. 13-cv-08285, Dkt. No. 98 at 2.

[33] *HSBC*, 2015 WL 890566, at *3.

[34] *Bank of Am.*, 2014 WL 4273358, at *5.

[35] *Walgreen*, 311 F.R.D. at 493.

[36] *Bank of the West*, 2015 WL 1744342, at *1.

[37] *Chase Bank*, 2016 WL 806549, at *3.

[38] *Mortgage Inv'rs*, 2016 WL 54678, at *1.

favor[] a finding that the settlement is fair, reasonable, and adequate." *Chase Bank*, 2016 WL 806549, at *9 (Feinerman, J.) (finding opposition by 0.000697% of the class favored approval of settlement); *Walgreen*, 311 F.R.D. at 493 (Kennelly, J.) (holding that a 0.0002209% opt-out rate supports the settlement); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) (Holderman, J.) (same, for 0.0032%); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.) (same, for less than 0.01%), *aff'd and modified on other grounds*, 799 F.3d 701 (7th Cir. 2015); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (St. Eve, J.) (same); *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (Pallmeyer, J.) (holding that the fact that "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements."), *aff'd,* 267 F.3d 743 (7th Cir. 2001). Thus, this factor weighs strongly in favor of final approval.

**D.    Class Counsel's Opinion.**

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586-87 (N.D. Ill. 2011). Here, Class Counsel has extensive experience in consumer class actions and complex litigation, and has settled (with court approval) numerous TCPA cases. (Siprut Aff. ¶17.) *Chase Bank*, 2016 WL 806549, at *9 (Feinerman, J.) ("Class Counsel are experienced TCPA litigators and strongly support the settlement. . . . this factor (whatever its weight) favors approval."); *Walgreen*, 311 F.R.D. at 495 ("Class counsel in this case are highly experienced class action litigators who strongly support the proposed settlement. This factor weighs in favor of approval.").

Class Counsel believes that the Settlement is one of the most beneficial TCPA settlements ever and meets the class-certification requirements of Rule 23. (Siprut Aff. ¶¶19, 20.) Class Counsel estimates that Settlement Class Members will receive approximately **$95.90**. This is the best payout based on a comparison of recent TCPA settlements and is remarkable given that the Class Members only needed to submit a one-page claim form. *See supra* Part III.A.2 The fairness and sufficiency of the Class relief is further underscored when weighed against Western Union's anticipated defenses and the inherent risks of litigation.

### E. The Stage Of The Proceedings And The Amount Of Discovery Completed.

The last factor to be considered by the Court is the stage of the proceedings and the amount of discovery completed. Here, the Parties have engaged in extensive informal discovery. Nevertheless, the amount of *formal* discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted.") (emphasis omitted); *Chase Bank*, 2016 WL 806549, at *9 (Feinerman, J.) ("Although this settlement-directed discovery is not identical to the full merits discovery that would enable counsel to better evaluate the merits of plaintiffs' claims, extensive formal discovery would entail substantial cost and might not have placed the parties in a materially better position than they are now to determine an appropriate settlement value.") (internal citations and quotations omitted); MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery).

Here, ample information and data was exchanged. Class Counsel requested, and Western Union provided, information concerning the size of the Class, the methods by which Class Members purportedly authorized Western Union to send text messages, and the platform used to send the text messages. Class Counsel was thus well-equipped not just to make the decision whether to settle on behalf of the Class, but also what the terms of such settlement would be.

## IV.    THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS.

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Settlement Class Members as possible who would be bound by the Settlement. In this case, direct notice by mail was sent to 741,197 Settlement Class Members. In addition, direct notice via e-mail was sent to 706,212 Settlement Class Members. As of March 31, 2016, only 2.1% of the Settlement Class Members on the Notice List did not receive direct notice. Hence, approximately 97.9% of the Settlement Class received notice. (Borges Decl. ¶¶6-10.)

In addition to the above directive notice, the court-appointed Settlement Administrator – Epiq Systems – established:

- **Interactive Voice Response.** The Settlement Administrator caused an Interactive Voice Response (the "IVR") system to be updated (877-841-8156) to provide information about the Settlement and to record requests for notices packets. As of March 31, 2016, 14,318 calls have been received by the IVR. (Borges Decl. ¶14.)

- **Internet Posting.** The Settlement Administrator caused a website to be updated (http://www.WesternUnionTCPASettelement.com) to provide information about the Settlement and to allow Class Members to file a Claim Form online and download copies of the Claim Form and Notice. As of March 31, 2016, there have been 92,037 users. (*Id.*)

- **Post Office Box.** The Settlement Administrator registered a post office box under the name of "Western Union Text Message Settlement, PO Box 3145, Portland, OR 97208-3145," to receive communications from Settlement Class Members. The post office box address was published in the direct notice, on the Settlement Website, and in the Claim Form. As of March 31, 2016, the Settlement Administrator has received 2,767

correspondences, of which 259 correspondences were received by USPS mail and 2,508 correspondences were received by email. (*Id.* at ¶15.)

The notice plan approved by the Court on November 10, 2015, provided the best notice practicable to apprise the Settlement Class of the pendency of this action. Class Members needed to fill-out a one-page, claim form that asks for basic information. *See Walgreen*, 311 F.R.D. at 499 ("[T]he claim form used in this case is short and direct."). The notice afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order. *W. Union*, 2015 WL 9302316, at *3. Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

## V.    The Objections To The Settlement Should Be Overruled.

Four individuals have filed objections to the Settlement: (a) Knott (Dkt. No. 67); (b) Price (Dkt. Nos. 69); and (c) the Sweeney Objectors (Dkt. No. 70). Price also submitted a supplemental objection *after* the objection deadline and *without* leave of Court. (Dkt. No. 84.)

### A.    Objector Price Lacks Standing.

The Parties have determined that objector Price lacks standing. As detailed in the parties' respective supplemental filings (Dkt. Nos. 93, 94), Price lacks standing to object to this Settlement because she affirmatively authorized Western Union to send her text messages on multiple occasions. Accordingly, Price is neither: (a) receiving a benefit under the Settlement; nor (b) releasing any claims against Western Union. Because Price is not a member of the Settlement Class, she is "without standing to contest the settlement." *Carnegie v. Household Int'l, Inc.*, 445 F. Supp. 2d 1032, 1035 (N.D. Ill. 2006) (Bucklo, J.); *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir. 1992) (noting "that a non-settling party does not have standing to object to a settlement between other parties"); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th

Cir. 1989) ("We hold, therefore, that non-class members have no standing to object, pursuant to a Rule 23(e) notice directed to class members, to a proposed class settlement."); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2015 WL 6165024, at *1 (N.D. Ill. Oct. 20, 2015) (Zagel, J.) ("An 'individual who is not a class member lacks standing to object to a settlement agreement to which he is not a party.'"); *Kaplan v. Houlihan Smith & Co.*, No. 12 C 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014) (Marovich, J.) ("[T]he individual who is not a class member lacks standing to object to a settlement agreement to which he is not a party…."); *In re Sw. Airlines*, 2013 WL 4510197, at *2 (Kennelly, J.) (finding that objectors who are not a part of the settlement class by virtue of opting out "lack standing to object") *aff'd as modified,* 799 F.3d 701 (7th Cir. 2015).[39] On this basis alone, this Court should overrule Price's objections.

### B.    The Sweeney Objectors' Objection Is Untimely.

The Sweeney Objectors filed their objection three days late. (Dkt. No. 70.) This too renders their objection invalid under this Court's Preliminary Approval Order. *W. Union*, 2015 WL 9302316, at *4 ("Any Settlement Class Member who without good cause does not file a written objection in the time and manner described above shall be: (a) deemed to have waived and forfeited any objections to the proposed Settlement . . . ."); *see Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *3 (N.D. Cal. Feb. 16, 2016) (finding court may refuse to consider objections that are not timely filed); *Moore v. Verizon Commc'ns Inc.*, No. C

---

[39] *Lopez v. Bank of Am., N.A.*, No. 10-CV-01207-JST, 2015 WL 5064085, at *11 (N.D. Cal. Aug. 27, 2015) ("Pittman is not a class member and has not shown that he otherwise has standing in this matter."); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015)  ("Court finds that Birner has no legal standing to object to the settlement because he has not demonstrated that he is an aggrieved class member.") (collecting cases) *reconsideration denied,* No. C-13-3440 EMC, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015); *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *10 (N.D. Cal. Feb. 20, 2015) ("[A]ll three objectors have failed to establish their standing to challenge the settlement.").

09-1823 SBA, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) (overruling objection "because it was not timely filed with the Court"); *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1336 n.3 (S.D. Fla. 2011) (same).

### C. Objections To Relief Provided To Class Members.

Objectors Knott and Price object to the relief provided to Settlement Class Members as inadequate. Specifically, Knott and Price argue that the Settlement is unfair because Western Union's potential liability is between $360 million and over $1 billion. (Dkt. Nos. 67 at 4 & 69 at 9.) Knott and Price also assert that the Settlement is unfair because it compensates Settlement Class Members on a per-claimant, as opposed to per-text message, basis. (*Id.*)

Knott and Price fail to grasp that the "essence of settlement is compromise." *Chase Bank*, 2016 WL 806549, at *7 (Feinerman, J.). In each of the settlements compared above, *see supra* Part III.A.2., the courts acknowledged that the potential liability of the defendants, but approved the settlements because "a settlement is a compromise, and courts need not – and indeed should not – reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re Capital One*, 80 F. Supp. 3d at 790 (Holderman, J.) (approving $75.5 million settlement where potential liability was ***$2.85 trillion***); *Chase Bank*, 2016 WL 806549, at *7 (approving $34 million settlement where potential liability was ***$48.4 billion***).

Furthermore, as the Parties represented at the November 10, 2015, preliminary approval hearing, the vast majority of Class Members received only one text message. (Transcript of November 10, 2015, hearing, attached hereto as Exhibit 4, at 2:21-5:7.) Significantly more time and money would need to be spent in order to determine exactly which Class Members may have been sent more than one text message. This means diminishing returns for *all* of the Class Members. As this Court noted, "even if there were some who had more than one [text message],

-27-

administratively, the game wouldn't be worth the candle in terms of hashing all of that out." (*Id.* at 5:14-16.) Moreover, courts in and out of this District routinely approve of settlements on a per-claimant basis even though damages on a contested basis are calculated per-text message or call. *Chase Bank*, 2016 WL 806549, at *7 (Feinerman, J.) ("The actual recovery per *claimant* is approximately $52.50. As some objectors note, . . . that recovery is well below the $500 statutory recovery available for each call or text. However, the recovery falls well within the range of recoveries in other recent TCPA class actions.") (emphasis original) (internal citations omitted); *Walgreen*, 311 F.R.D. at 489 (Kennelly, J.) ("It is true that thirty dollars per claimant is substantially less than the $500 statutory recovery available for each unlawful phone call Walgreens allegedly made. But Kolinek winning at trial and securing complete recovery for all nine million class members is but one potentiality, and it is a dubious one at that."); *In re Capital One*, 80 F. Supp. 3d at 793 (Holderman, J.) ("As the court discussed above, a class-wide recovery in line with the statutory awards is unrealistic and would ultimately result in class members finding their place in line among Capital One's unsecured creditors in a bankruptcy proceeding."); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *8 (N.D. Ill. Feb. 27, 2015) (Holderman, J.) ("The court therefore agrees with Class Counsel and HSBC that a call-based claims process is inadvisable, particularly because the increased administration costs would result in a corresponding decrease in the money available to the class."). Accordingly, this Court should overrule the objections to the relief provided to Settlement Class Members.

### D. Objections To Attorneys' Fees.

All of the Objectors assert that Class Counsel's request for of 35% of the Fund (less administration costs and Plaintiff's Incentive Award) is too high. (Dkt. Nos. 67, 69, 70.) Only

Knott and Price, however, develop this argument. Knott and Price cite the same cases that are from *outside* the Seventh Circuit to contend that Class Counsel's fee award "should be no more than 20%." (Dkt. Nos. 67 at 4-5 & 69 at 13-14 (citing *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *7 (N.D. Cal. Aug. 29, 2014) *reconsideration denied sub nom.* 2015 WL 1969094 (N.D. Cal. May 1, 2015); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309692, at *1 (N.D. Cal. Mar. 31, 2014); *Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *17 (S.D. Ohio Feb. 7, 2014); *Arthur v. Sallie Mae, Inc.*, No. 10-CV-00198-JLR, 2012 WL 4076119, at *1 (W.D. Wash. Sept. 17, 2012)). In addition, Price argues that this Court should use the lodestar method instead of the percentage method to award attorneys' fees. (Dkt. No. 69 at 15.)

As detailed below, however, these arguments contravene Seventh Circuit law and the routine practice of courts in this District.

### 1. The Objectors Improperly Rely On The Ninth Circuit's Benchmark.

Knott's and Price's cited cases are inconsistent with the Seventh Circuit's sliding-scale approach adopted in *In re Synthroid Marketing Litigation*, 325 F.3d 974 (7th Cir. 2003) ("*Synthroid II*"). The *Synthroid II* approach has been endorsed by a number of courts in this District, including this Court. *Chase Bank*, 2016 WL 806549, at *16 (Feinerman, J.); *Walgreen*, 311 F.R.D. at 501 (Kennelly, J.); *Interline Brands*, 2015 WL 1399367, at *5 (St. Eve, J.); *Wilkins*, 2015 WL 890566, at *10-11 (Holderman, J.); *In re Capital One*, 80 F. Supp. 3d at 804 (Holderman, J.).

Under the *Synthroid II* sliding-scale, the Seventh Circuit awards 30% of the first $10 million of the settlement as attorney fees. *Synthroid II*, 325 F.3d at 980. Further, courts often award upward enhancements from the suggested benchmark based on risk factors. *Walgreen*,

2015 WL 7450759, at *16 (awarding 30% as a benchmark percentage and an additional 6% as a risk adjustment); *In re Capital One*, 80 F. Supp. 3d at 806 (applying "Eisenberg and Miller's 6% premium" where case was only "slightly riskier" than average TCPA class action). "As the Seventh Circuit has explained, 'if the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million.'" *Walgreen*, 2015 WL 7450759, at *16 (quoting *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011)). Thus, Knott's and Price's 20% benchmark is well below established precedent.

Moreover, Price's and Knott's cited-cases make clear that those courts relied on the ***Ninth Circuit's*** benchmark of 25% − not the Seventh's Circuit's benchmark of 30%. *Walgreen*, 311 F.R.D. at 501 ("[A]s [the plaintiff] rightly points out, the decisions upon which these objectors rely are not analogous to this one because unlike the Seventh Circuit, the Ninth Circuit instructs district courts to calculate 25% of the common fund as the 'benchmark' for a reasonable fee award and then provide an explanation of any 'special circumstances' that might justify a departure from that benchmark."); *Discover*, 2014 WL 1309692, at *1 ("The ***Ninth Circuit*** has established '25% of the common fund as a benchmark award for attorneys' fees.'") (emphasis added); *Sallie Mae*, 2012 WL 4076119, at *1 ("The benchmark for an attorneys' fee award ***in the Ninth Circuit*** is twenty-five percent of the common fund.") (emphasis added).[40]

---

[40] Plaintiff also notes that the Ninth Circuit's approach appears to include administrative costs, whereas the Seventh Circuit expressly rejected in the inclusion of such costs when calculating attorneys' fees. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (citing *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("[A]dministrative costs should not have been included in calculating the division of the spoils between class counsel and class members.")).

### 2. The Lodestar Method Is Not Warranted And, Even If It Was, Class Counsel Requests A Reasonable Multiplier.

Price argues the lodestar method is more appropriate here and principally relies on the Seventh Circuit's ruling in *In re Southwest Airlines Voucher Litigation*, 799 F.3d 701 (7th Cir. 2015). (Dkt. No. 69 at 16.) But in *Southwest*, the Seventh Circuit expressly stated that "[u]nder the 'common fund' doctrine, an attorney who recovers a common fund for the benefit of a class is **entitled to a reasonable portion of the fund** that is *made available* to the class rather than the amount actually *claimed* by the class." 799 F.3d at 708 (bold emphasis added; italic emphasis original). The Settlement here is a common fund of $8.5 million (whereas in *Southwest*, the Class received drink vouchers and attorneys' fees were paid *separately* by the defendant).

Moreover, this Court has the discretion to award attorneys' fees under the percentage method. And given that this Settlement is ***one of the best TCPA settlements ever***, there is no reason to deviate from this presumptive approach. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) ("Plaintiff's counsel correctly notes that a lodestar cross-check of the attorney's fees is not warranted."); *Chase Bank*, 2016 WL 806549, at *14 (Feinerman, J.) (noting "discretion" to use the lodestar method, but awarding fees under the percentage method); *Walgreen*, 311 F.R.D. at 500 (Kennelly, J.) ("The Seventh Circuit is agnostic regarding which approach district courts should choose, and no Seventh Circuit case law suggests that a percentage-of-the-fund approach will yield a reasonable result only where it satisfies a lodestar cross-check. The Court agrees with [plaintiff's] counsel that the fee award in this case should be calculated based on a percentage-of-the-fund method.").

In all events, however, even if this Court were to adopt the lodestar method, Class Counsel's requested multiplier of 2.53 is well within the range of reasonable multipliers used in this Circuit. (*See* Dkt. No. 61 at 14-16 (discussing reasonableness of a 2.53 multiplier).)

Accordingly, this Court is well within its discretion to award the requested attorneys' fees under the percentage method or lodestar method.

### E. Objection To Plaintiff's Incentive Award.

Price asserts that Plaintiff's requested incentive award of $5,000 is "excessive." (Dkt. No. 69 at 19.) Wrong. Courts in this District routinely grant similar incentive awards based on a similar level of time and effort contributed by the class representatives. *E.g.*, *Walgreen*, 311 F.R.D. at 500 (approving $5,000 incentive award for a class representative that was not deposed.); *HSBC*, 2015 WL 890566, at *2 (same); *In re AT & T Mobility*, 792 F. Supp. 2d at 1041 (approving $5,000 award for class representatives who did not respond to a discovery request or deposition, citing "their role in reviewing, considering, and approving the [s]ettlement [a]greement and fee application, and especially their willingness to take a more-active role if necessary."); *see In re Sw. Airlines Voucher Litig.*, 799 F.3d at 705 (affirming $15,000 incentive award as to one of the two class representatives). Accordingly, the Court should overrule Price's objection.

### F. Objection To Objection Procedure.

Price makes the conclusory and vague objection "to any procedures or requirements imposed that (1) require information or documents not relevant to the propose settlement and the objection made herein, (2) are unnecessary, (3) are calculated to reduce the number of objections or to intimidate Class members from submitting timely objections made in good faith, or (4) violate objector's and her counsel's due process rights and/or Rule 23." (Dkt. No. 69 at 20.) Price fails to point to a specific procedure in this Settlement that raises her purported concerns – suggesting such issues do not exist here. Price does not attempt to develop this argument any further.

In any event, courts in this District have routinely preliminary approved settlements and imposed the exact same, if not substantially similar, procedures required by this Court's Preliminary Approval Order. *Chase Bank*, No. 13-cv-08285, Dkt. No. 55 (N.D. Ill. Oct. 21, 2015) (preliminary approving a TCPA settlement with similar objection requirements, including: filing a written objection filed with the court; filing a statement of grounds for the objection; and providing the identification of "any documents which such objector desires the Court to consider."); *HSBC*, No. 14 C 190, Dkt. No. 53 (N.D. Ill. Feb. 27, 2015) (approving a TCPA settlement with substantially similar objection requirements, including: filing a written objection filed with the court; filing an explanation of the objection; providing the identity of counsel and their entitlement to compensation for the objection; and providing a list of all persons who will be called to testify at the final approval hearing); *Schulte*, 2010 WL 8816289, at *7 (approving settlement with substantially similar objection requirements, in addition to requiring a list of all other objections filed by the objector and the objector's counsel during the five years prior to the date the objection was filed). Accordingly, the Court should overrule Price's objection.

### G. Objection To Claims Administration.

The Sweeney Objectors assert that the "claims administration process fails to require future oversight, accountability, and reporting about whether the claims process actually delivers what was promised." (Dkt. No. 70 at ¶1.) However, this Court's Preliminary Approval Order clearly states that the Settlement Administrator is an agent of the Court (Dkt. No. 58) and, under the Settlement Agreement, the Settlement Administrator is responsible for reviewing all claims for validity, record all opt-outs and objections, and distribute payments to Settlement Class Members. (Dkt. No. 52-1 at Parts VI, V, VII.) Therefore, the Court should overrule this objection.

## H.      Objection To Time-Frame For Issuing Checks To Class Members.

The Sweeney Objectors contend that "No timeframe for completing administration of the monetary relief is set, so Class Members cannot know when payment would arrive." (Dkt. No. 70 at ¶2.) Clearly, the Sweeney Objectors have not read the Settlement Agreement which expressly states, "Within 30 Days after the Effective Date, or another such time as the Parties agree upon, the Settlement Administrator shall cause the Cash Awards in the form of checks to be distributed to members of the Settlement Class." (Dkt. No. 52-1 at Part IV.F.) The conditions for the Effective Date are also laid-out in the Settlement Agreement. (*Id.* at Part XII.) Thirty days after these conditions have been met, the Settlement Administrator will issue checks to Class Members. It is not surprising that the Sweeney Objectors failed to read the Settlement Agreement before lodging their improper objections, given that their objections are the same, boilerplate objections Patrick Sweeney has used in prior settlements. *Compare Gay*, Case No. 14-cv-60604, Objection Of Patrick S. Sweeney Proposed Settlement, Dkt. No. 34 (Dec. 30, 2015) (Dkt. No. 80, Ex. G) (yellow highlight) *with Douglas v. The Western Union Co.*, Case No. 14-cv-1741, Objections Of Patrick S. Sweeney And Pamela A. Sweeney To Proposed Settlement And Notice Of Intention To Appear At Fairness Hearing, Dkt. No. 70 (Feb. 25, 2016) (Dkt. No. 80, Ex. H) (yellow highlight). Accordingly, this objection is entirely without merit and should be overruled.

## I.      Objection Regarding A Cy Pres Procedure.

The Sweeney Objectors assert that a *cy pres* procedure needs to be articulated. (Dkt. No. 70 at ¶7.) However, the Settlement Agreement does not mention a *cy pres* procedure or recipient because the entire Fund is being distributed. (Dkt. No. 52-1.) Accordingly, this Court should overrule this objection.

### J.     Objection To Class Definition.

Price submitted a supplemental objection arguing that the Settlement Class definition is "not sufficiently definite." (Dkt. No. 84.) Price's supplemental objection is both procedurally and substantively flawed. As to procedure, Price was well aware of the Settlement Class definition prior to filing her supplemental objection on March 16, 2016. Nevertheless, Price waited until nearly *one month* after the deadline to submit her supplemental objection. Further, Price did not seek leave of Court to file this late objection.

In the Preliminary Approval Order, this Court held:

> Any Settlement Class Member who without good cause does not file a written objection in the time and manner described above shall be: (a) deemed to have waived and forfeited any objections to the proposed Settlement; (b) foreclosed from raising any objection to the proposed Settlement at the Fairness Hearing; (c) bound by all of the terms of the Agreement and by all proceedings, orders and judgments by the Court; and (d) foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

*W. Union*, 2015 WL 9302316, at *3. Because Price's supplemental objection fails to comply with the Preliminary Approval Order, her objection should be overruled.

As to substance, in the Parties' respective supplemental filings, they detailed the scope of the Settlement Class and how the Notice List was compiled. (Dkt. Nos. 93, 94.) There are two objective groups of individuals who meet the requirement for receiving an "unsolicited text message" as the term is used in the Settlement Agreement:

    (a)    **Group 1**: Persons who: (i) signed-up for an online account with Western Union; (ii) received a text message; and (iii) did *not* enroll in Western Union's loyalty program (because the terms and conditions of that program authorize Western Union to send text messages to enrollees); and

    (b)    **Group 2**: Persons who: (i) conducted an online transaction with Western Union; (ii) received a text message stating that their

recipient has not picked up their money transfer; and (iii) did *not* authorize Western Union to send text messages.[41]

(*Id.*)

Under the Seventh Circuit's recent ruling in *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) *cert. denied,* No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016) – which Price fails to address – these criteria meet easily satisfy the standards of certifying a class definition. In *Direct Digital*, the Seventh Circuit identified three potential issues with class definitions: (1) vagueness, such that the court cannot identify who should receive notice and share in the recovery; (2) subjective criteria, such as a person's state of mind; and (3) fail-safe classes that depend on a defendant's liability. *Direct Digital*, 795 F.3d at 660.

The Settlement Class definition has none of these issues. *First*, there is no concern as to who is in the Settlement Class and, hence, who receives notice and a share of the Settlement Fund. The Settlement Administrator, an "agent of the Court," has a list of 741,800 members of the Settlement Class. *Second*, the definition is not subject to any subjective criteria. Rather, there are two sets of objective criteria which determined who comprised the Settlement Class. *Third*, the definition does not depend on Western Union's liability. The term "unsolicited" within the meaning of the Settlement Class definition is not the same as "prior express consent" or "prior express written consent" within the meaning of the TCPA. Instead, this term refers to individuals who were sent text messages but did not specifically authorize the sending of any text messages. *See Chase Bank*, 2016 WL 806549, at *6 (Feinerman, J.) ("Given the Seventh Circuit's disavowal of the heightened ascertainability requirement adopted by some other circuits, *see Mullins*, 795 F.3d at 658, the class here is easily ascertainable.").

---

[41] Plaintiff does not concede that such authorization, even if obtained by Western Union, meets the legal requirements of "prior express consent" or "prior express written consent" within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the corresponding regulations at 47 C.F.R. §64.1200.

Lest there be any doubt, Western Union maintains that it has its consent-defenses. Nevertheless, the Parties were able to identify 741,800 individuals with whom Western Union desired to settle its potential liability. Accordingly, Price's supplemental objection should be overruled.

## **CONCLUSION**

For the reasons set forth above, Class Counsel requests that the Court enter an order overruling the objections raised by the Objectors and granting final approval of the Settlement

Dated: April 4, 2016

Respectfully submitted,

By: */s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Richard L. Miller II
*rmiller@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342
**www.siprut.com**

*Counsel for Plaintiff*
*and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Combined Motion For Final Approval Of Class Action Settlement And Response To Objections** was filed this 4th day of April 2016 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.


*/s/ Joseph J. Siprut*