# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JASON DOUGLAS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 14-cv-1741 ) ) Hon. Gary Feinerman ) |
| v. | ) Hon. Jeffrey Cole ) |
| THE WESTERN UNION COMPANY, a Delaware corporation, | ) ) ) ) |
| Defendant. | ) |

**AFFIDAVIT OF JOSEPH J. SIPRUT**

I, Joseph J. Siprut, declare:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated.

2. I am admitted to practice in the State of Illinois and in the United States District Court for the Northern District of Illinois, the Seventh Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, the United States Supreme Court, and other federal district courts. I am one of the attorneys for Plaintiff Jason Douglas ("Plaintiff") and lead counsel for the Settlement Class herein. I make this declaration in support of Plaintiff's Motion For Final Approval Of Class Action Settlement And Response To Objections. If called as a witness, I would and could testify to the following:

3. I am the managing partner of the law firm of Siprut PC (herein "Siprut PC" or "Class Counsel"). I have personally been involved in the entirety of the prosecution of this class action lawsuit (the "Action").

4. The operative complaint in the Action alleges that Defendant The Western Union Company ("Western Union") sent or had sent on its behalf unsolicited text messages to unwilling recipients in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

5. On March 12, 2014, Plaintiff filed his Class Action Complaint against Western Union. (Dkt. No. 1.)

6. After effecting service on Western Union, this Court set an initial status hearing for May 7, 2014, and required Plaintiff and Western Union (collectively, the "Parties") to file an initial status report by April 30, 2014. (Dkt. No. 9.) On April 3, 2014, Western Union moved for an extension of time to answer or otherwise plead. (Dkt. No. 14.)

7. Meanwhile, on April 30, 2014, the Parties filed a Joint Initial Status Report (the "Initial Report"). (Dkt. No. 20.) During the Parties' scheduling conference and in the Initial Report, Western Union contended that Plaintiff's claims are be subject to an arbitration agreement. (*Id.* at ¶5.) Western Union stated that absent an agreement to submit the claim to arbitration, Western Union would move to compel arbitration. (*Id.*) On May 5, 2014, this Court issued a Minute Entry stating that if Western Union intended to file a motion to compel arbitration, it should notice the motion for presentment at the initial status hearing. (Dkt. No. 21.) That same day, however, Western Union filed its Answer, denying the substance of the allegations and raising *30 affirmative defenses*. (Dkt. No. 22.) At the initial status hearing on May 7, 2014, this Court stayed discovery until 14 days after the Court's ruling on Western Union's anticipated motion to compel arbitration. (*Id.*)

8. On May 27, 2014, Plaintiff filed his Motion To Strike Western Union's Affirmative Defenses. (Dkt. No. 24.) Pursuant to Rule 12(f) of the Federal Rules of Civil

Procedure, Plaintiff sought to strike each of Western Union's 30 affirmative defenses. During this time, the Parties had numerous communications and exchanges, and discussed potential mediation tracks. At a June 12, 2014, hearing, Parties reported that they intended to engage in private mediation. (Dkt. No. 26.) Accordingly, Plaintiff agreed to withdraw his pending motion to strike without prejudice. (*Id.*) This Court ordered formal discovery to remain stayed pending further order. (*Id.*)

9. Between June and September 2014, the Parties continued to exchange information and worked on selecting an appropriate mediator. At a September 9, 2014, hearing, the Parties reported that a mediation was scheduled for early October. (Dkt. No. 27.) On October 9, 2014, the Parties, as well as a representative from Western Union's insurer, CNA, attended a mediation at JAMS Resolution Center. Retired District Judge Wayne R. Andersen served as the Parties' mediator. (Dkt. No. 28.) After multiple submissions to Judge Andersen and still more information exchanged, the Parties conducted negotiations for a full day, but were unable to reach a resolution. (*Id.*) Nevertheless, the Parties agreed to continue negotiations with Judge Andersen.

10. Between October 2014 and February 2015, the Parties continued numerous discussions on a tri-lateral basis, as Western Union's insurer continued to play a role. (Dkt. No. 30.) On February 27, 2015, the Parties engaged in *another* full-day session of mediation in New York with Judge Andersen presiding. (Dkt. No. 36.) That session again concluded with no agreement. The Parties continued their negotiations, and Plaintiff meanwhile refiled his pending Motion For Class Certification, pursuant to the Court's instruction. (Dkt. Nos. 34, 35, 37.)

11. On April 22, 2015, the Parties reported that they had reached an agreement in principle, resolving Plaintiff's claims on a class-wide basis. (Dkt. No. 39.) The Parties then spent

four more months exchanging drafts of a final, written settlement agreement. After many exchanges of edits, the Parties were finally able to agree to the form and content of a settlement agreement (the "Agreement") in late July 2015. (Dkt. No. 52-1.)

12. In the Agreement, Plaintiff negotiated additional confirmatory discovery given that the Court had previously stayed formal discovery. (Dkt. No. 52-1 at Part VII.) In addition, the Parties stipulated to an Agreed Confidentiality Order, entered by the Court on August 28, 2015. (Dkt. No. 46.) Western Union conducted a search of its records for two instances in which text messages were arguably sent without any authorization. (Dkt. No. 94.) Thereafter, Western Union produced thousands of pages of documents, including lists of 868,805 entries of potential Settlement Class Members. After conducting a comprehensive review of the documents, the Parties and the court-appointed Settlement Administrator determined that there 741,800 unique entries representing Settlement Class Members. The list of the 741,800 Settlement Class Members was used as the list of persons to whom notice would be directed (the "Notice List"). The Notice List contains the names and last known addresses and mobile numbers for each Settlement Class Member. In addition, the Notice List contains the last known email addresses for a subset of the Settlement Class Members. Plaintiff also reviewed documents regarding the manner in which the text messages were sent, including the involvement of third parties and the equipment used to send the text messages.

13. On October 28, 2015, Plaintiff filed his Motion For Preliminary Approval Of Class Action Settlement (Dkt. No. 52), which this Court granted on November 10, 2015. *W. Union*, 2015 WL 9302316, at *3. On February 8, 2016, Plaintiff filed his Motion For Attorneys' Fees, Costs, And Incentive Award, requesting the Court to award attorneys' fees in the amount

of 35% of the Fund after notice and administration costs are deducted, and an incentive award to Plaintiff in the amount of $5,000. (Dkt. No. 61.)

14. Three sets of objections have been filed by John Knott ("Knott"), Bethany Price ("Price"), Patrick A. Sweeney, who filed a joint objection with his wife, Pamela A. Sweeney (together the "Sweeney Objectors") (collectively, the "Objectors"). On February 18, 2016, Knott filed his objection to the Settlement. (Dkt. No. 67.) On February 22, 2016, Price filed her objection to the Settlement. (Dkt. No. 69.) On February 25, 2016, *three days after the Objection Deadline of February 22, 2016*, the Sweeney Objectors filed their joint objection to the Settlement. (Dkt. No. 70.)

15. On March 3, 2016, Plaintiff filed a motion to depose the Objectors. (Dkt. No. 72.) Objectors Knott and Price filed responses in opposition (Dkt. Nos. 77 & 78) and Plaintiff filed a reply in support (Dkt. No. 80). At a March 17, 2016, hearing, this Court denied Plaintiff's motion without prejudice and directed Plaintiff to provide a supplemental filing regarding objector Price's lack of standing and the scope of the Settlement Class. (Dkt. No. 87.) On April 1, 2016, the Parties submitted their respective supplemental filing addressing the Court's questions. (Dkt. Nos. 93, 94.)

16. The benefit obtained for the Settlement Class is $8,500,000, minus the costs of settlement administration, Class Counsel's fees, and Plaintiff's incentive award.

17. I have substantial experience in complex business litigation and class actions. My Firm, Siprut PC, substantially concentrates its practice in the prosecution of class actions. My Firm's resume is attached as Exhibit A hereto.

18. Throughout this litigation, my Firm has diligently prosecuted this matter, dedicating substantial resources to the investigation and litigation of the claims at issue, and has

successfully negotiated the settlement of this matter to the benefit of the proposed Class. Neither my firm nor the Plaintiff have any interests antagonistic to the interests of the other Class members.

19. Plaintiff and Class Counsel believe that the claims asserted against Western Union in this litigation have merit. However, Plaintiff and Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the litigation against Western Union through trial and appeals. Plaintiff and Class Counsel have also taken into account the uncertainty and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. This litigation involves complex class issues, which would involve protracted and risky litigation if not settled. Moreover, in the event of any judgment against Western Union, an appeal could postpone any recovery for several years.

20. Accordingly, Plaintiff and Class Counsel believe that there is substantial benefit to the Class of receiving a cash award from Western Union.

21. The Settlement Agreement, and the terms thereof, was reached after rigorous advocacy and extensive negotiations, in which I directly participated. Plaintiff and Class Counsel believe that the terms set forth in the Settlement Agreement confer substantial benefits upon the proposed Class, and is a fair, reasonable, and adequate resolution of the Class' claims against Western Union. As such, the Settlement is entitled to a good-faith determination and I respectfully submit that this Court should enter the proposed Preliminary Approval Order and, ultimately, the Final Order and Judgment, approving this proposed Settlement in all respects.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

-7-

Executed on April 4, 2016 at Chicago, Illinois.

                                                                        *s/ Joseph J. Siprut*

4846-8659-4863, v. 1