**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JASON DOUGLAS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 14-cv-1741 |
| v. | ) ) | Hon. Gary Feinerman |
| THE WESTERN UNION COMPANY, a Delaware corporation, | ) ) ) | Hon. Jeffrey Cole |
| Defendant. | ) ) | |

**SUPPLEMENTAL FILING REGARDING PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Joseph J. Siprut
*jsiprut@siprut.com*
Richard L. Miller II
*rmiller@siprut.com*
Richard S. Wilson
*rwilson@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342
**www.siprut.com**

*Counsel For Plaintiff
And the Settlement Class*

Pursuant to this Court's April 25, 2016, Minute Entry (the "Order") (Dkt. No. 102), Plaintiff Jason Douglas ("Plaintiff"), by and through his counsel of record, Siprut PC ("Class Counsel"), hereby submits this supplemental filing (the "Filing") addressing the matters raised by the Court.

## BACKGROUND

On April 25, 2016, this Court held a hearing (the "Hearing") on Plaintiff's Motion For Final Approval Of Class Action Settlement (Dkt. No. 96) and Plaintiff's Motion For Attorneys' Fees, Costs, and Incentive Award (the "Fee Petition") (Dkt. No. 61). Following that hearing, the Court entered an Order directing counsel for the parties to provide it with certain information and documents:

1. When the Western Union loyalty program commenced;

2. Whether, at all relevant times, the Western Union online system allowed a person to engage in transactions without first joining the Western Union loyalty program;

3. Whether, if the class definition is altered in this case, due process would be satisfied by simply sending another communication to the class members reaffirming their entitlement to submit a claim and giving them additional time to do so;

4. How the Claims Administrator intends to identify and reject fraudulent claims;

5. How many hours catalogued in the Fee Petition (Dkt. No. 61-1 at 168-171) reflect work Class Counsel already performed as of the date Plaintiff filed the Fee Petition as opposed to work that Class Counsel anticipated performing *after* the date of the filing of the Fee Petition;

6. How many hours Defendant's outside counsel has billed on this case through April 25, 2016;

7. Class Counsel's "detailed attorney time records for this case"; and

8. Class Counsel's fee petitions or motions that include hours worked from January 2014 through April 2016.

(Dkt. No. 102.) Each of these matters is addressed *infra*.[1]

## DISCUSSION

### I. When Western Union's Loyalty Program Commenced.

The Court has asked when the Western Union Loyalty Program at issue in this case commenced. (Dkt. No. 102.) Western Union has had several loyalty programs over the course of its existence, but the loyalty program that has been at issue during this settlement, the "My WU" program, was launched in the United States on or about November 6, 2013, and was gradually rolled-out to different platforms following that date. (Declaration of Michael Hafer, attached hereto as Exhibit A, ¶3.) The My WU program was not launched online until the end of June 2014. (Declaration of Wrena D'Souza, attached hereto as Exhibit B, ¶3.) As such, when Plaintiff enrolled with Western Union online in February of 2014, he would not have been able to enroll in the My WU program online. (Compl. (Dkt. No. 1) ¶20.)

### II. Whether Western Union's Online System Allowed A Person To Engage In Transactions Without First Joining The Western Union Loyalty Program.

The Court has asked whether Western Union's online system allowed a person to use Western Union services without joining Western Union's loyalty program. (Dkt. No. 102.) Prior to June 2014, Western Union did not require enrollment in its loyalty program in order to engage in online transactions. At the end of June 2014, Western Union launched its My WU program

---

[1] The Court's Order indicated that the parties should cooperate in a "joint" submission (Dkt. No. 102) and, consistent with that directive, counsel for Defendant The Western Union Company ("Western Union") has provided information to Plaintiff's counsel, including appropriate declarations. However, Western Union did not join either Plaintiff's motion for final approval or Plaintiff's Fee Petition. Western Union has reserved all of its rights with respect to Plaintiff's claims in the absence of settlement, including but not limited to the right to invoke the arbitration provision in Plaintiff's contract with Western Union and the right to oppose certification of a contested class. Thus, Western Union has cooperated with Plaintiff and his counsel to address the issues raised by the Court, but it does not join in this submission.

online, which allowed its customers, for the first time, to enroll in MY WU online. (Declaration of Wrena D'Souza, ¶3.) If a customer created a digital account *prior* to June of 2014, he or she could continue to transact business with Western Union on its website *without* joining the My WU program, and can do so to this day. (*Id.* ¶4.) Following the roll-out of the My WU program online, however, a new customer who enrolled for a digital account with Western Union was and is required to register with My WU at the time that he or she enrolls for such an account. (*Id.* ¶5.)

The portion of the Settlement Class comprised of people who (a) initiated transactions via Western Union's website; (b) did *not* sign up for Western Union's loyalty program; and (c) were nonetheless sent text messages associated with the My WU program were sent those text messages between November 6, 2013 and March 17, 2014. (Declaration of Shila Faries, attached hereto as Exhibit C, ¶4.) Accordingly, these members of the proposed Settlement Class could have enrolled for a digital account with Western Union without joining the My WU program.

III.    **If The Class Definition Is Amended, Would Due
        Process Be Satisfied By Sending Additional Notice To Class
        Members And Giving Them Additional Time To Submit Claims?**

The Court has asked, if the class definition is amended, would due process be satisfied by sending additional notices to class members. (Dkt. No. 102.) Yes. If this Court amends the class definition, supplemental e-mail notice will satisfy due process. That is doubly true given that amending the class definition at final approval does not necessarily require additional notice in the first place. *See Lively v. Dynegy, Inc.*, No. 05-CV-0063-MJR, 2008 WL 4657792, at \*1-2 (S.D. Ill. Sept. 30, 2008) (following remand from the Seventh Circuit, the district court amended the class definition and declined to require additional notice, finding that the prior notice satisfied Fed. R. Civ. P. 23 and due process); *see also Van Oss v. N.Y.*, No. 10 Civ. 7524(SAS), 2012 WL

2550959, at *1 (S.D.N.Y. July 2, 2012) (modifying class definition at final approval, but declining to require additional notice where the prior notice satisfied Fed. R. Civ. P. 23).

Pursuant to Fed. R. Civ. P. 23(c)(3)(B), this Court's final order approving the Settlement must "specify or describe the persons . . . whom the Court finds to be class members." In this case, the identities of the potential class members are all set forth on Western Union's list of people who received "unsolicited" text messages. Indeed, the parties reiterated to the Court at the Hearing that it was their intention to resolve the claims of the 741,800 individuals that they had identified and to whom direct notice via mail and e-mail was provided (the "Class List"). (Dkt. No. 96-3.) It is the parties' intention to settle the claims of those individuals on the Class List, and only those individuals on the Class List. If a person does not appear on the Class List, they are not a member of the Settlement Class. Accordingly, the Settlement Class would be objectively defined, in accord with the Seventh Circuit's ruling in *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) *cert. denied,* No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016), and this Court's final order would specify whose claims are being released.

At the Hearing, the Court also inquired as to whether there may be some individuals on the Class List that received Notice, but decided not to file a claim because they: (a) were confused by the class definition; and (b) believed that they could not state under penalty of perjury that they received an "unsolicited" text message. The parties maintain that this concern can be resolved.[2]

_____

[2] There are probably very few people to whom this concern applies. The Claims Administrator has received 18,209 communications regarding the Settlement, but only two of those communications asked about the term "unsolicited." (Declaration of Charles Marr Regarding Claims Administration ("Marr Claim Admin. Decl."), attached hereto as Exhibit D, ¶¶5-6.) *See also In re Deepwater Horizon*, 739 F.3d 790, 820 (5th Cir. 2014) ("even if we were to accept that the class notice could have been improved by adding the word, 'allegedly,' this minor legal ambiguity would not be enough to render the class notice deficient"). In *In re Deepwater*, the Fifth Circuit discussed its prior holding in *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 199 (5th Cir. 2010), stating that "in *Katrina Canal Breaches*, in which we found that a statement in a class

As discussed at the Hearing, the parties can send supplemental notice via e-mail to Settlement Class members that tells them they are members of the Settlement Class and are entitled to participate in the Settlement. The notice would direct these individuals to file a claim form with their previously issued unique identifier code within a reasonable period of time (to be set by the Court) if they desire a share of the Settlement Fund.

Given that notice by e-mail previously reached approximately 75% of the proposed class (Dkt. No. 96-3 at ¶8 (stating that 552,887 Settlement Class Members received direct notice via email)), supplemental notice by e-mail is well within the Federal Judicial Center's guidelines for notice. *See* Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide," at 1 (noting that class notice should reach at least 70% of the proposed class). Accordingly, this supplemental notice would satisfy due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-76 (1974) (class notice need only be "practicable under the circumstances" and "provided to those Class members who are identifiable through reasonable effort"). Moreover, the cost of supplemental e-mail notice is reasonable and would not significantly alter the cost of notice and administration.

In addition to supplemental notice by e-mail, the parties suggest amending the Settlement Website to prominently reflect that if a person received notice, that person is a member of the Settlement Class and is entitled to submit a claim. This information could be added to the main page, the FAQs page, and the notice page. In sum, the parties believe that the class definition can be amended and due process can be satisfied by taking these steps.

---

notice to be 'slightly misleading' regarding a point of Louisiana law, we held that the notice was not rendered deficient because 'the statement as written was accurate in its essential point.'" 739 F.3d at 819.

IV.    **How The Claims Administrator Has
       Identified And Intends To Reject Fraudulent Claims.**

The Court would like to know the Claims Administrator's techniques for addressing fraudulent claims. (Dkt. No. 102.) Epiq is the Claims Administrator for this Settlement. (Marr Claim Admin. Decl., ¶1.) Epiq has developed several mechanisms to identify fraudulent claims, which it is using in conjunction with this Settlement. *First*, Epiq provided a 12-digit unique identifier on the Claim Forms it distributed. That code can be used to match the Claim Form to a Settlement Class member as identified on a list of names, mailing addresses and email addresses provided by Western Union (the "List"). (*Id.* ¶8.) If a Claim Form contains an identification number, and the information provided with the Claim Form matches the information associated with the identification number, the Claim will be accepted. (*Id.* ¶10.) If the information submitted on the Claim Form is unrelated to the class member for whom the identification number corresponds, Epiq will reject the claim. (*Id.* ¶¶9-10.)

*Second*, if a Claim Form does not include the unique identifier, Epiq uses a combination of the name, mailing address, phone number and email address on the Claim Form in an effort to match it to a Settlement Class member on the List. For the Claim Form to be considered a match to the List, the Claim Form must match to at least two of the aforementioned data points. (*Id.*) As of May 4, 2016, 29,172 total Claim Forms were matched to the List (the "Matched Claims") and 25,114 Claim Forms were not matched to the List (the "Unmatched Claims"). (*Id.* ¶9.) Epiq will deny the Unmatched Claims because they are most likely fraudulent. (*Id.*)

*Third*, Epiq will reject duplicative claims made by the same class member. Pursuant to the terms of the Settlement, Class members can only receive one *pro rata* share of the Settlement. Where a Matched Claim was submitted by a Settlement Class member using multiple phone

numbers, Epiq will segregate those "subsequent claims" so that each Class member receives only one payment. (*Id.* ¶11.)

## V. The Number Of Hours In Plaintiff's Fee Petition That Reflect Work Class Counsel Anticipated Performing After The Fee Petition Was Filed.

The Court has directed Class Counsel to identify the hours set forth in Class Counsel's pending Fee Petition describing anticipated attorney time, as opposed to hours already accrued at the time the Fee Petition was filed. (*See* Dkt. No. 61-1, at 170.) The lodestar summary previously submitted draws a literal line between present and anticipated time (*id.*), as all work after the "Estimated" designation is anticipated (*i.e. was* anticipated, at the time the Fee Petition was filed), and all work prior to the "Estimated" designation had already occurred.

As the lodestar summary details, at the time the Fee Petition was prepared (and the hours tabulated), Class Counsel allocated 318 total attorney hours for time to be worked from the date the Fee Petition was filed through the ultimate order of final approval, including anticipated time spent: (a) dealing with potential objectors; (b) preparing the motion for final approval; (c) preparing for and attending the final approval hearing; and (d) anything and everything else that would require time on this case at the district court level. (*Id.*) Including anticipated future time in any lodestar calculations submitted with a Fee Petition is standard practice, and the rationale for doing so is simple. Given the nature of class action settlements, objectors often appear only after a fee petition is submitted, and months or even *years* of additional work may be performed after a fee petition is first filed. Thus, if the point of the lodestar calculation is to determine whether the ultimate fee award is reasonably commensurate with the amount of work performed on the case,

then it is only fair and sensible to include *all* the work in those calculations, instead of only the work performed at the time a fee petition is submitted.[3]

The present case illustrates this point. Since the time Class Counsel first filed the Fee Petition, and since the Objectors first surfaced, Class Counsel has handled numerous: (a) motions; (b) conference calls with the Objectors, Western Union, and the class administrator; (c) court hearings; and (d) significant supplemental briefing and submissions at the Court's request—with still at least one more court hearing to go. And that does not include any time spent on future appeals. Since the time Class Counsel's fee petition was first filed, four attorneys and two law clerks at Class Counsel's law firm have spent a combined total of 261.6 hours. (Declaration of Joseph J. Siprut, attached hereto as Exhibit E, ¶3.) Viewed in that light, Class Counsel's prior allocation of 318 hours (which included hours spent on the Fee Petition) has turned out to be reasonable.

## VI. Hours Billed By Defendant's Outside Counsel Through April 27, 2016.

In the Minute Order for the Hearing, the Court asked Western Union's outside counsel to identify how much time it has billed on this case. (Dkt. No. 102.) As of April 27—already a month ago—counsel for Defendant has billed a total of 830 hours in defense of this matter. (Declaration

---

[3] *See Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, C/A No. 3:08-cv-00271-JFA, 2012 WL 4061537, at *9 (D.S.C. Sept. 14, 2012) (approving class counsel's percentage award of common fund for "past work, future work, and future expenses"); *Williams v. Nat'l Sec. Ins. Co.*, 237 F.R.D. 685, 700 (M.D. Ala. 2006) (awarding class counsel "attorneys' fees and reimbursement for all past *and future* time and expenses") (emphasis added); *Hoirup v. Prof'l Eng'rs in Cal. Gov.*, Civil No. CIV-S-02-662 GEB PAN, 2006 WL 2791158, at *4 (E.D. Cal. Sept. 27, 2006) (granting motion for attorneys' fees where class action settlement "include[d] the claim for attorneys' fees for all work conducted in the case, past *and future*, in the district court and in the court of appeals") (emphasis added); *In re PaineWebber Ltd. P'ships Litig.*, 999 F. Supp. 719, 725 (S.D.N.Y. 1998) (directing that Class Counsel receive reasonable attorneys' fees "to compensate for future work expended").

of Kathleen P. Lally, attached hereto as Exhibit F, ¶2.) These hours do not include time spent by Western Union's internal counsel.

## VII.    Class Counsel's Attorney Time Records For This Case.

In its Minute Order relating to the Hearing, the Court directed that Class Counsel submit detailed attorney time records regarding this case. (Dkt. No. 102.) As an initial matter, Class Counsel wishes to clarify that there are no "detailed time records" for this particular matter (other than what has previously been submitted) and apologizes to the Court to the extent there is any confusion on this point.

The methods by which Class Counsel keeps track of its time varies from case-to-case. For example, some of our firm's retentions involve traditional, bilateral commercial litigation in which the firm is paid on an hourly basis. For those matters, individual attorneys will maintain contemporaneous time records for work on that matter, which is eventually centralized and then invoiced to the client (either on a monthly basis or consistent with whatever the terms of the retention agreement dictate). The description of the work performed (including the level of detail) and other billing issues (time increments, treatment of costs, etc.) are, again, dictated by the terms of the retention agreement.

In other matters, individual attorneys may not keep contemporaneous time records, and instead may derive or "reconstruct" their time at some later point when it becomes necessary or appropriate to do so. (This may end-up being monthly in certain class action cases, such as when co-counsel agree to exchange time; or when defense counsel requests it and Class Counsel agrees to provide it; or, perhaps, not until the very end of a successful case when a fee petition is submitted for a class settlement.) The records relied upon include review of attorney calendars, emails, and legal research records, among other things, which is an appropriate method for determining

lodestar figures. *Rudolph v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 83 C 3303, 1990 WL 7168, at *2 n.2 (N.D. Ill. Jan. 18, 1990) (court approving lodestar in class settlement where attorneys' time was reconstructed rather than based on records created contemporaneously).[4] This is the method used by Class Counsel for lodestar on this case.

Unless a court's standing order or the applicable local rules require otherwise, when attorneys at Class Counsel's firm tabulate their lodestar time for a particular matter, they are directed to allocate their time to one of the approximately 15 "task billing" categories depicted in Class Counsel's fee petition. (*See* Dkt. No. 61-1, at 170.) These figures were supplied by each time-biller listed in the summaries and inserted directly into the lodestar macro. There are no additional "time records" responsive to the Court's request.

## VIII. Class Counsel Fee Petitions That Include Hours Worked From January 2014 Through April 2016.

The Court directed Class Counsel to submit all its fee petitions that include hours worked from January 2014 through April 2016. (Dkt. No. 102.) Copies of all fee petitions or motions that include hours worked from January 2014 through April 2016 are being submitted to the Court contemporaneously with the filing of this document.[5] Because many of the fee petitions that show hours worked from January 2014 through April 2016 also include hours worked (on those same

---

[4] *See also Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010). ("The district court was not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness."); *Kline v. City of Kansas City, Mo, Fire Dep't*, 245 F.3d 707-708-09 (8th Cir. 2001) (affirming attorneys' fees award where plaintiff's counsel submitted reconstructed time records).

[5] There are 33 such fee petitions, consisting of over 4,700 pages. Accordingly, they are being provided to the Court for *in camera* review. If the Court would prefer an alternate means of submission, Class Counsel will immediately comply with any directive from the Court.

cases) from preceding time periods, however, in order to fully comply with the Court's directives, the compiled fee petitions cover a range of time from 2011 to April 2016.

*     *     *

Although the Court has requested additional information on lodestar and Class Counsel has sought to provide as comprehensive a response as possible, in order to prevent any issue of waiver or even ambiguity, Class Counsel reiterates its position that the lodestar data should be considered entirely irrelevant in this all-cash, non-reversionary common fund settlement. In just the last two years, numerous courts within this District have held time and again that while courts have the discretion to utilize either the lodestar or percentage-of-fund methodologies, the overarching goal should be to "mimic the market," or approximate the fee class counsel would have negotiated with clients at the outset of the litigation. *Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 WL 890566, at *9-10 (N.D. Ill. Feb. 27, 2015) (Holderman, J.) (employing the market-mimicking approach, which estimates the contingent fee class counsel would have negotiated favorably with clients at the outset of the litigation, and estimating the TCPA market rate fee scale as 30% of the first $10 million of recovery).

Following this principle, each of the following courts awarded fees from common fund settlements using a percentage-of-the-fund analysis; each time awarded a minimum of 30% of either the fund or the first $10 million (sometimes more); and each time treated lodestar as irrelevant to this calculation (either by expressly stating that lodestar did not matter, or by simply ignoring the lodestar issue altogether in the calculations):

- *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230(GF), 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (Feinerman, J.) (awarding class counsel $1,116,666.67—one-third of the guaranteed settlement fund—plus $33,843.59 in costs, without any discussion of lodestar);

-11-

- *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502-03 (N.D. Ill. 2015) (Kennelly, J.) (finding that the market rate for legal services in TCPA class action was 36 percent, and awarding $2,824,200—36% of the settlement fund—as attorneys' fees to class counsel);

- *Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (Chang, J.) (finding that attorneys' fees and costs worth 33.5% of Fair Labor Standards Act collective action settlement fund was reasonable);

- *Craftwood Lumber Co. v. Interline Brands, Inc.*, Case No. 11-cv-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (St. Eve, J.) (finding it reasonable to assume that class members and class counsel would have bargained for a sliding-scale contingency fee resulting in a declining percentage of fees as the total recovery increased, and awarding class counsel 30% of the first $10 million of the settlement);

- *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 849, 851 (N.D. Ill. 2015) (Dow, J.) (holding that "A district court is under no obligation to cross-check the requested fees against the lodestar[,]" disregarding lodestar-based objections, and reasoning that class counsel using too many hours to achieve a given result is a loss that falls on counsel themselves).

Class Counsel's fee petition here tracks the market. The settlement fund is $8.5 Million, and the fee request is 35% of the fund after first deducting notice and administration expenses, consistent with the law of this Circuit. While Class Counsel has attempted to support an award of 35% rather than the 30% minimum contemplated by the *HSBC Bank* schedule, any award below 30% could not be reconciled with this line of cases in the Northern District. Even at 30%, of course, Class Counsel acknowledges that it would receive a premium relative to its time on this case – just as we have been on the losing end of this scenario many times, where our fees are capped at a percentage of a common fund settlement even when our lodestar vastly exceeds that amount (or where we bring a case and lose, and thus receive nothing).

Dated: May 23, 2016                    Respectfully submitted,

                                       */s/ Joseph J. Siprut*  _____

                                       Joseph J. Siprut
                                       *jsiprut@siprut.com*
                                       Richard L. Miller II
                                       *rmiller@siprut.com*
                                       Richard S. Wilson
                                       *rwilson@siprut.com*
                                       **SIPRUT PC**
                                       17 North State Street
                                       Suite 1600
                                       Chicago, Illinois 60602
                                       Phone: 312.236.0000
                                       Fax: 312.878.1342

                                       ***Counsel For Plaintiff***
                                       ***And the Settlement Class***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Supplemental Filing Regarding Plaintiff's Motion For Final Approval Of Class Action Settlement** was filed this 23rd day of May 2016 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.


*/s/ Joseph J. Siprut*