IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON DOUGLAS, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 14-cv-1741 |
| ) | |
| THE WESTERN UNION COMPANY, ) a Delaware corporation, ) | Hon. Gary Feinerman |
| ) | |
| Defendant. ) | Magistrate Judge Jeffrey Cole |

**OBJECTOR BETHANY PRICE'S RENEWED MOTION FOR ATTORNEY FEES AND INCENTIVE AWARD AND MEMORANDUM IN SUPPORT**

COMES NOW Objector Bethany Price ("Ms. Price") pursuant to Fed. R. Civ. P. 23(h) and 54 and L.R. 54.3 and respectfully moves this Court to award her attorney fees and an incentive award for having clarified the definition of the settlement class eligible to recover benefits from the settlement and having caused a reduction of over $2.4 million in Class Counsel's fee award. Specifically, for the reasons set forth herein below, Ms. Price moves for fees in the amount of $314,170 and an incentive award to her in the amount of $5,000.

### I.  BACKGROUND.

On November 10, 2015, this Court preliminarily approved a settlement in this case to benefit a class defined as

> All Persons in the United States who received one or more unsolicited text messages sent by or on behalf of Western Union between March 12, 2010 and the date of Preliminary Approval

Under the proposed settlement, Western Union agreed to pay $8.5 Million into a settlement fund to be distributed to claimants. The Court-approved notice advised class members that Class Counsel intended to seek a fee of 35% of the net settlement fund after notice and administrative expenses (resulting in a fee of approximately $2,891,000), plus reimbursement of reasonable, actual out-of-pocket expenses.

Ms. Price fit within the definition of a settlement class member, and through her counsel, objected to the settlement[1] - in particular class counsel's fee request [Doc. 69]. However, the parties claimed that Ms. Price was not an *intended* member of the settlement class. At the time Ms. Price filed her objection, she had no reason to believe the she was not a member of the settlement class. To the contrary, she was led to reasonably understand that she was eligible to receive benefits under the settlement. Further, she understood that any claim she had against Western Union related to the litigation would be released if the settlement was approved.[2]

In response to the parties' claim that she was not a class member, Ms. Price submitted proof that she had had received an "unsolicited text message" from Western Union during the class period. In addition, through her counsel,

---

[1] See section I – A below.
[2] The breadth of the released claims under the Settlement Agreement [Doc. 52-1] is quite broad and includes all claims "with respect to any conduct ... on or prior to the Preliminary Approval Date arising from or relating to allegedly unauthorized text or other messages or phone calls by the Released Persons to the Releasing Persons, including, without limitation, the causes of action and allegations made by Plaintiff in the Litigation as well as claims and allegations that the Released Persons violated the TCPA or any similar claims under the consumer protection and/or deceptive trade practices acts and common law of any state or the District of Columbia."

Ms. Price supplemented her objection to point out that the class definition was not "sufficiently definite to allow the Court, or those persons affected by the proposed Settlement, to determine whether a particular person is a Settlement Class member." Doc. 84, Page ID 825.

Faced with this, the parties claimed that they *meant to include* only two groups in the settlement class: "(1) persons who obtained an online account from Western Union, received a text message, and did not enroll in the Western Union loyalty program, which requires the enrollee to consent to receiving text messages; and (2) persons who conducted an online transaction with Western Union, received a text message stating that the recipient did not retrieve the money transfer, and did not authorize Western Union to send a text message."

Turning back to Ms. Price's substantive objection, as part of her opposition to Class Counsel's fee request for 35% of the settlement, Ms. Price argued that "Class Counsel should be required to submit their detailed contemporaneous hours spent in this case for the purpose of conducting a lodestar cross-check against the reasonableness of any proposed percentage fee." Doc. 69, PageID #:613, fn 14.

Although other purported class members objected to the 35% fee request by Class Counsel (Doc. 67 and Doc. 70), Class Counsel seemed to single out Ms. Price, falsely and maliciously defaming her in pleadings filed in this Court – which remain publicly available – in an attempt to force her to drop her objection.

Undaunted, Ms. Price and her counsel continued to press the objection

3

and combed through the summaries of Class Counsel's time records. Through her counsel, Ms. Price reported to the Court that the Class Counsel claimed to have spent 385.5 hours for "post-mediation communications and drafting settlement agreement" as well as hundreds of hours more on routine and uncomplicated tasks. [Doc. 101, Page ID 1245]. Ms. Price's counsel further brought to the Court's attention that Class Counsel's summary of time for drafting the motion for attorney fees, included "reviewing/responding to objections" which had not even been filed as of February 8, 2016 - the date the fee motion was filed. Id. At this point, the Court took notice and ordered that the parties file a joint brief addressing, *inter alia,* how many hours cataloged on Class Counsel's spreadsheet [Doc. [61]-1 at 168-171] "reflected work already performed as of 2/8/2016 vs. work that counsel anticipated performing after 2/8/2016." Doc. 102.

On August 31, 2018, the Court issued an order granting final approval of the settlement. Doc. 146. In its final approval order, in recognition that the "class definition would benefit from clarification," the Court amended the class definition as purportedly *intended* by the parties in order to comply with the Seventh Circuit's requirement that it be sufficiently definite that the class can be ascertained. Further, "due to [Class Counsel's] conduct in this matter" brought to light by Price's counsel, the Court slashed counsel's fee to $425,000 – a reduction of $2,441,000.

Thus, in the end, Ms. Price and her counsel not only improved (if not salvaged) the settlement by garnering an objective definition for the settlement

class, but also put an additional $2.4 Million in the class members' pockets.

**I – A.     MS. PRICE WAS INCLUDED IN THE ORIGINAL DEFINITION OF THE SETTLEMENT CLASS**

In the minute order denying Ms. Price's first motion for attorney fees and an incentive award *without prejudice* [Doc. 161], the court stated

> In arguing that she was a class member under the original class definition (Dkt. 159 at 1 n.1, 2), [Ms.] Price does not acknowledge the court's contrary finding in the 10/31/2018 order [153], let alone explain why that finding was incorrect. If [Ms.] Price renews her motion, she should address that issue and, in addition, the question whether a person who never fell within the class definition (original or modified) may move for fees and an incentive award under Rule 23.

On the question of whether she was a class member under the original class definition, Ms. Price did not comprehend the Court's Memorandum Opinion and Order [Doc. 146] to include a finding that Ms. Price was not a class member under the original definition;[3] rather, Ms. Price understood the court's finding to be limited to her status under the amended class definition. Ms. Price based that understanding on the Court's finding that she was not a member of either of the two groups identified in the amended class definition. Specifically, the Court determined that Ms. Price "enrolled in Western Union's loyalty program [and] …"checked a box acknowledging that she was consenting to receive text messages from Western Union" such that she [did] not fall within the first category set forth above."  Further, the Court determined that "the two

---

[3] On page 3 of the Order [Page ID #:1498], the Court stated, "Four class members objected to the proposed settlement" and specifically referenced Ms. Price's objection.

5

text messages that she received … followed two money transfer orders that were not conducted online and did not involve circumstances where Western Union was informing her that the intended recipient had not yet retrieved the transfer" and therefore she "does not fall within the second category set forth above."

Nowhere in the Order did the Court find that Ms. Price did not meet the original definition, i.e. that she did not "receive[] one or more unsolicited text messages sent by or on behalf of Western Union between March 12, 2010 and the date of Preliminary Approval." Indeed, if such a finding had been made, it would have been an error.

The Court properly determined that Ms. Price received text messages, so the only question is whether those text message were "unsolicited." The answer to that question is clearly "yes." Black's Law Dictionary (Sixth Edition) defines "solicit" [4] as

> To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication. To awake or incite to action by acts or conduct intended to and calculated to incite the act of giving. The term implies personal petition and importunity addressed to a particular individual to do some particular thing.[5]

---

[4] The most recent edition of Black's Law Dictionary does not contain a definition for "solicit." No definition in Black's was available for the term "unsolicited," but it is assumed to mean the opposite of "solicited."

[5] Definitions from non-legal dictionaries to which class members may be more familiar such as Webster's and www.dictionary.com are similar if not identical.

By contrast, consent is "voluntarily yielding to what another [person] proposes or desires." Black's Law Dictionary (Tenth Edition).

Thus, soliciting is an effort to get what one wants, whereas consent is agreeing to give someone else what he wants. And, there is no evidence or suggestion that Ms. Price wanted text messages from Western Union. Instead, the evidence merely demonstrates that she "consented" to receiving text messages.

Importantly, when the issue of Ms. Price's standing was first raised, the parties framed the issue of standing solely based on whether she had received a text from Western Union – and the Court accepted the parties' position. Specifically, at the March 10, 2016 hearing, counsel and the Court had the following exchange:

> THE COURT: … With respect to Price, plaintiff's counsel says that the status of Miss Price as a class member is dubious. In Price's response to the motion, Price attached what she says are screen shots of texts which she says place her in the class. So, my question for plaintiff is: Are you now satisfied that Miss Price is in the class?
>
> …
>
> MR. SILVERMAN: We're still investigating into whether Miss Price has standing. At the time we filed the motion, we were unaware of the fact -- of the text messages that she allegedly had received.
>
> THE COURT: Okay. So, you don't know -- what do you need to know, what do you need to do in order to determine whether Miss Price is actually a member of the class or not?
>
> MR. SILVERMAN: I was actually going to work with

7

> opposing counsel, as well as the settlement administrator, to determine if, in fact, she had received a text message.
>
> THE COURT: Okay. All right. So, a deposition of Miss Price may not be necessary on that issue.

Doc. 80-1, PageID #:748.

Notably, the parties' did not argue then – and have never argued - that the text messages Ms. Price received were "solicited." Indeed, such an argument would have undermined the entire settlement by demonstrating that identification of class members would require a factual inquiry into whether a person "solicited" or "consented" to receiving text message such that the class was not objectively ascertainable. See, Doc. 146 PageID #:1502 ("a class definition 'must be definite enough that the class can be ascertained.'"), citations omitted.

**I – B.      MS. PRICE MAY MOVE FOR FEES AND AN INCENTIVE AWARD DESPITE NOT BEING A MEMBER OF THE AMENDED CLASS DEFINITION**

Pursuant to the Court's suggestion, undersigned counsel for Ms. Price has researched whether an objector who was a member of the settlement class (or who at least appeared to a member based on the published notice), but was later determined not to be a class member under an amended class definition, may move for fees and an incentive award under Rule 23. See, Doc. 146, PageID #:1528. Counsel's research did not reveal any prohibition against such a motion, and a decision to deny Ms. Price's motion for that reason would seemingly be unprecedented. In fact, denying payment to Ms. Price and her counsel would be inconsistent with the common-fund doctrine which provides

8

that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *In re Southwest Airlines Voucher Litig.*, 898 F.3d 740, 745 (7th Cir. 2018), citing *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013) and additional cases. This common fund doctrine applies as a "default rule" unless otherwise provided for in the court-approved settlement. *Id.* at 746.

Notably, Ms. Price's objection was not stricken or otherwise removed from consideration by the Court. To the contrary, counsel for Ms. Price has been permitted to fully participate in this case. Further, by all indications Ms. Price's objections were fully considered by the Court and, as detailed below, in some instances led to material changes to the settlement which benefitted the class.

Finally, but for their reasonable and good faith understanding that Ms. Price was a class member, neither she nor her counsel would have objected or otherwise become involved in this case. In the end, they were led (or misled) into believing (1) that Ms. Price was a class member whose rights were being adjudicated in this case, (2) that she was therefore entitled to participate in the settlement and (3) as a class member, she had the right to submit an objection to any portions of the settlement to which she disapproved. Under these circumstances, and because the efforts of Ms. Price's counsel substantially benefitted the class, her lawyers are entitled to receive payment.

9

## II. APPLICABLE LAW

### A. Objector's Counsel Should Be Compensated.

In this Circuit, "Objectors who add value to a class settlement may be compensated for their efforts." *In re Southwest Airlines Voucher Litig.*, 898 F.3d 740, 744 (7th Cir. 2018) (reversing trial court's ruling denying fees to counsel for a successful objector). Other circuits are in accord. See, e.g., *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 744 (3d Cir. 2001) (Objectors who provide a material benefit to the class through their objections are entitled to fees as a matter of law.); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (an objector should be paid attorney's fees if, through their efforts, they "increase the fund or otherwise substantially benefit the class members.")

If the efforts of objectors' counsel result in "a settlement more favorable to the class" than what was originally proposed, then "the objectors will receive a cash award that can be substantial." *Southwest Airlines*, 898 F.3d at 745, citing *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). The Court may order the award "out of the relief awarded to the class members." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 748 (7th Cir. 2011).

Unless the record clearly reflected *beforehand* that an objector's arguments were superfluous, the Court should not deny objectors' counsel its fees merely because an argument has "already occurred to the judge." *Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 842 F. Supp. 2d 346, 351 (D.

Me. 2012) (an objector cannot "be certain" that the Court will act on concerns it has voiced).[6]

"[T]he equitable common-fund doctrine applies" to objector's counsel just as it does to class counsel. *In re Trans Union*, 629 F.3d at 744. "A proper attorneys' fee award is based on success obtained and expense (including opportunity cost of time) incurred." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008). Objectors' fee awards should be commensurate with the benefit they have conferred, regardless of whether that results in a different multiplier than that of class counsel. *In re Trans Union*, 629 F.3d at 748 (approving allocation of fees that awarded objecting counsel a higher multiplier than class counsel where objectors had obtained improved results).

In calculating an objector's fee, the Court should award a percentage of the benefit created using "the formula set forth in *Redman*." *Kaufman v. Am. Express Travel Related Servs.*, No. 07-cv-1707, 2016 U.S. Dist. LEXIS 26167, at *44–45 (N.D. Ill. Mar. 2, 2016), *aff'd*, 877 F.3d 276, 288 (7th Cir. 2017). This includes non-monetary benefits. *Id.*; *see also Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396–97 (D.N.J. 2012) (awarding, between two objectors, a total of 13.4% of the value of a non-monetary benefit).

In determining the percentage of the benefit to award a successful objector's counsel, courts consider whether the objector was primarily or "jointly" responsible for a benefit. Where an objector causes the Court to take a

---

[6] Further, where the Court would have reduced class counsel's award anyway, some courts award objectors their lodestar. See, e.g., In re Visa Check/MasterMoney Antitrust Litig., No. CV-96-5238 (JG), 2004 U.S. Dist. LEXIS 8729, at *5 (E.D.N.Y. Apr. 27, 2004).

particular action that benefits the class, the Court may award objector's counsel a percentage based in line with the 30% baseline established under Seventh Circuit law. *Kaufman*, 2016 U.S. Dist. LEXIS 26167, at *44 (awarding objectors' counsel 34% of the estimated $700,000 value of supplemental notice where, "[b]ecause of the Intervenors' objections, the court hired [an expert] to review the notice program and ultimately to design and oversee enhancements."). In contrast, where arguments by objectors "merely expand[] upon the Court's previously expressed skepticism" and cause class counsel to voluntarily reduce the amount of its fee petition, an award to objectors' counsel of 10% of the difference is "appropriate." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011).

Lastly, where objectors spur class counsel to negotiate a larger settlement, the objector is entitled to a slice of the pie as a "joint caus[e]" of the added value. *In re Trans Union*, 629 F.3d at 747. In such cases, an award to objectors' counsel of five to ten percent or more of the added value is easily justified. *See, e.g., In re Sw. Airlines Voucher Litig.*, 898 F.3d at 746 (10% of the value added to a renegotiated settlement was a "modest" fee request); *In re Trans Union*, 629 F.3d at 748 (where class counsel renegotiated settlement, adding $70 million to the fund, it was error to award only 3.9% to objectors' counsel rather than 5.9%); *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 662 (E.D. Pa. 2015) (objector's counsel was entitled to 4.9% of additional $15 million).

12

In the end, of course, awarding objector's counsel a healthy fee for their efforts which benefit the class is not merely equitable, it is also good public policy. Unfavorable settlements are regularly approved quickly, quietly and unopposed, without a single objection filed. See *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey of several federal districts that reported between 42% and 64% of settlements engendered no filings by objectors); see generally *In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.*, 55 F.3d 768, 812 (3d. Cir. 1995) (class members "have an insufficient incentive to contest an unpalatable settlement agreement because the cost of contesting exceeds the objector's pro rata benefit.") (internal quotation omitted).

### B.  Ms. Price Should Be Paid An Incentive Award

In addition to awarding fees to counsel, it is appropriate for Courts to award objectors incentive payments for their role in conferring a benefit upon the class. *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 398–99 (D.N.J. 2012). Indeed, the leading class action treatise endorses such awards. *See* 4 *Newberg on Class Actions*, 11:38 (4th ed.). Courts across the country have approved service awards to successful objectors. See, e.g., *In Re: Lifescan, Inc. Consumer Litig.*, No. 98-20321 (N.D. Cal., Mar. 18, 2002) (awarding $10,000 service award to objector); *Machulsky v. Lilliston Ford, Inc.*, 2008 WL 2788073 (N.J. App. 2008) (awarding a service award because "the arguments advanced by him contributed to the rejection of the initial settlement and modification of

13

the final settlement"); *Graham v. Security Pacific Housing Servc., Inc.*, No. 96-132 (S.D. Miss. June 26, 1997) (awarding $350,000 in fees and expenses to objectors and a total of $8,000 to the four objectors as "bonuses"); *Sheller, Ludwig & Badey v. Gateway 2000, Inc.*, No. 96-08-SD-01659 (Pa. Ct. C. P. Philadelphia Co. Jan. 23, 1997) (awarding free computers to the objectors as incentives).

In considering whether to grant objectors incentive awards, "courts have considered whether: (1) the objector's particular efforts conferred a benefit on the class; (2) the objector incurred personal risk; and/or (3) the objector was substantively involved in the litigation." *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d at 398–99 (collecting cases).

### III. ARGUMENT AND ANALYSIS

#### A. Ms. Price's Counsel Was Responsible for Reducing Class Counsel's Fees by $2,441,000 and Should Receive 12% of This Amount.

Counsel for Ms. Price was primarily responsible for Class Counsel's drastically reduced fee award. As referenced in the Court's final approval order, Class Counsel's initial fee request of 35% of the net settlement fund was in line with the Seventh Circuit's "presumption" under *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." Doc. 146, PageID #:1517. Indeed, the fact that the requested fee fell within the range permitted by the Seventh Circuit undoubtedly influenced the Court in approving the initial

14

notice that Class Counsel would seek a 35% fee and in not requiring Class Counsel to submit their time sheets as part of its fee motion in the first place.

If Ms. Price and her counsel had tucked tail and run when Class Counsel sought unnecessary discovery, wrongfully labeled Ms. Price as a criminal, and attempted to discredit her counsel as a so-called "professional objector" [Doc. 72], Class Counsel's fee would not have been reduced. And, make no mistake, this was exactly what Class Counsel had in mind when it embarked on its cruel attack on Ms. Price and their vitriolic campaign against her counsel. When pressed by this Court, Class Counsel was completely unable to articulate the relevance of their tactics. See, Transcript of March 10, 2016 Hearing [Doc. 80-1].

Further, it was counsel for Ms. Price who (1) analyzed Class Counsel's fee petition and supporting documents to uncover their deficiencies and inaccuracies and (2) pushed for disclosure of Class Counsel's "detailed time records" (which never existed), both of which led the Court to reduce the fee award to $425,000.[7]

Accordingly, Ms. Price requests a fee of $292,920.00 representing 12% of the benefit conferred to the class, i.e. the difference between the initial fee request and the reduced fee ultimately awarded by the Court. This is only a fraction of the 30% baseline in this Circuit. Further, the requested 12% is only

---

[7] The Court determined if Class Counsel's missteps were limited to the misguided discovery efforts towards objectors and the untrue representations about Ms. Price's background, "this would have remained an ordinary case as far as attorney fees are concerned." Doc. 146, PageID #:1519.

slightly higher than the 10% awarded in *Puerto Rican Cabotage* where Class Counsel <u>voluntarily</u> reduced its fee.[8]

### B. Ms. Price's Counsel Was Responsible for Clarifying the Settlement Class and Giving Adequate Notice to Class Members and Should Receive .5% of the Total Settlement

As the Court noted, due to the vagueness of the term "unsolicited," there was a risk "that persons receiving notice might not have understood that they were members of the class." Doc. 146, PageID #:1510. Thus, the settlement as entered into by parties likely failed Rule 23's requirement of ascertainability, and the notice likely did not pass muster for due process. Ms. Price and her counsel are responsible for fixing those deficiencies.

This important clarification led to an additional limited re-notice to class members who did not file a claim, and may lead to additional class members making claims for payment from the common fund. Notably, this additional notice will be paid for by Class Counsel and will not reduce the payment to class members.

Thus, not only did the clarification obtained as a result of Ms. Price and her counsel's efforts correct an error which could have jeopardized the entire settlement, they made it possible for more class members to file claims.

---

[8] Objectors have been awarded attorney's fees for far less of a contribution to the outcome of a class action. For instance, in *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 983 (E.D. Tex. 2000), attorney fees were awarded to an objector who secured six additional months for the redemption of coupons, which was found to be a substantial benefit to the class. Here, the efforts of Ms. Price and her counsel caused a substantial monetary benefit for the Class. Certainly, the Class members' recovery of an additional $2.4 Million is a much more favorable result in comparison to a few extra months to redeem a coupon.

Because the work of Ms. Price's counsel arguably saved the entire settlement (or at a minimum prevented time-consuming and costly appeals), a fee of five percent of the overall settlement (the same amount awarded to the Siprut firm) would not be inappropriate. However, Ms. Price and her counsel only request an additional $21,250 (or .5% of the settlement) for these efforts.

### C. A Lodestar Cross-Check Validates the Requested Fee.

A lodestar cross-check further supports the reasonableness of the fee request. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011). Counsel for Ms. Price spent 125.6 hours of attorney time and 108.5 hours of paralegal time on this matter for a total lodestar of $77,470.[9] See Declaration of W. Allen McDonald, attached as Exhibit A.

If the Court grants the entire fee request of $314,170, then the lodestar multiplier will be almost exactly than 4.0. This is within the range of reasonableness for multipliers, particularly where the work involved was complex and involved a significant risk of non-payment. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) ("Multipliers anywhere between one and four . . . have been approved."). Objectors are rarely paid for their efforts, so such a risk multiplier is entirely justified.

---

[9] These hours do not include any time spent on this fee petition or the motion to alter or amend the judgment which was denied. Upon request, counsel will submit a summary of the time spent or actual detailed time records of counsel for *in camera* examination by the Court.

17

### D.     An $5,000 Incentive Award to Ms. Price Is Reasonable and Appropriate

Ms. Price requests an incentive award of $5,000 – the same amount awarded to the named Plaintiff, Jason Douglas. In many cases, successful objectors have incurred little or no personal risk or effort. *See, e.g.*, *In re Apple Inc. Secs. Litig.*, 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) (incentive award of $1,000 for objector who participated in bringing about a benefit to the class but only faced the *risk*, not the reality, of discovery); *Dewey*, 909 F. Supp. 2d at 400 ("nominal" awards of $500 each to objectors); *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 665 (E.D. Pa. 2015) ("modest" award of $1,000 to objector who "did not participate in discovery, nor was he deposed"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 813 (N.D. Ohio 2010) ("nominal" incentive award of $500 where objection was successful but objector incurred no personal risks). Unlike those cases, in the instant matter, Ms. Price suffered untoward personal attacks from Class Counsel. Yet, she did not back down and continued to pursue her objection, and the class was richly benefitted by her dedication and resolve. Adding further injury to the insult, the untrue allegations against her have not been stricken from the record and remain available to the public.

## IV.     CONCLUSION.

For the above reasons, Ms. Price moves for $314,170 in fees to her counsel and a $5,000 incentive award to herself, each to be paid from the common settlement fund.

Respectfully Submitted,

Dated:  November 26, 2018

/s/ W. Allen McDonald
W. Allen McDonald, Esq.
249 N. Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865-246-0800
*Counsel for Bethany Price*

CERTIFICATE OF SERVICE

      I do hereby certify that on November 26, 2018, a copy of the foregoing was submitted electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

      This 26th day of November, 2018.

                                            /s/ W. Allen McDonald
                                            W. Allen McDonald, Esq